521 Pa. 121 (1989)
555 A.2d 812
COMMONWEALTH of Pennsylvania, PENNSYLVANIA GAME COMMISSION, Appellant,
v.
COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Ganzer Sand & Gravel, Inc. and Hammermill Paper Company.
Supreme Court of Pennsylvania.
Argued May 11, 1988.
Decided March 6, 1989.
*122 Stuart M. Bliwas, Chief Counsel, Game Com'n, William R. Pouss, Acting Chief Counsel, Harrisburg, for appellant.
Howard J. Wein, Ward T. Kelsey, Pittsburgh, for appellee Dept. of Environmental Resources.
William J. Kelly, Robert C. LeSuer, Erie, for appellee Ganzer Sand and Gravel, Inc.
Daniel Brocki, Erie, for appellee Hammermill Paper Co.
Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAPOS and STOUT, JJ.

*123 OPINION
NIX, Chief Justice.
This is an appeal by the Pennsylvania Game Commission ("Commission") from an order of the Commonwealth Court, 97 Pa.Commw. 78, 509 A.2d 877 affirming an adjudication of the Environmental Hearing Board ("Board"). We granted review to address the alternative holding of the court below regarding the Commission's standing to litigate the matter in controversy.
The subject of this case is a solid waste permit granted by the Department of Environmental Resources ("DER"), under the provisions of the Solid Waste Management Act,[1] to Ganzer Sand & Gravel, Inc. ("Ganzer"). The permit would allow Ganzer to establish and operate a solid waste landfill on a certain 40-acre tract in Erie County, for the purpose of providing a disposal site for residual waste from the Hammermill Paper Company. The property on which the fill is to be located is adjacent to a 1,343-acre tract of wetlands maintained by the Commission as a waterfowl refuge. The Commission raised various environmental objections to the proposed landfill, and subsequently challenged the issuance of the permit by taking an appeal to the Board pursuant to section 1921-A of the Administrative Code of 1929.[2]
In its appeal to the Board, the Commission asserted that allowance of the landfill violated several environmental laws, namely, regulations promulgated under the Solid Waste Management Act, provisions of the Dam Safety and Encroachments Act,[3] and the environmental rights article of *124 the Pennsylvania Constitution, Article I, § 27. The appellant also alleged that the operation of the landfill, in its actual effect, would produce polluted ground water and surface-water runoff, and that such would adversely impact upon the eco-system of the waterfowl sanctuary.
In its argument based on the Solid Waste Management Act, the Commission objected to the ratio of waste to renovative soil that would exist at the landfill, and to the fact that the fill would not have a liner or leachate collection system. According to the appellant, such defects would be violative of design standards mandated by regulations implementing the statute and would be environmentally injurious.
The Commission's central statutory challenge, however, was based on the Dam Safety and Encroachments Act ("DSEA"). That statute, like others has as one of its express purposes the protection of natural resources and environmental values, 32 P.S. § 693.2(3). To that end, the DSEA provides, inter alia, that "[n]o person shall construct, operate, maintain . . . any dam, water obstruction or encroachment without the prior written permit of [DER]." 32 P.S. § 693.6(a) (emphasis added). DER did not consider the DSEA applicable to the landfill; thus, a water-obstruction permit was deemed unnecessary. The Commission, however, contended that the Ganzer fill would create a "water obstruction" as to be subject to the foregoing provision, and that the absence of the special license mentioned therein negated the validity of the solid waste permit. In sum, the Commission urged that DER could not legitimately authorize the Ganzer landfill without first securing compliance with the DSEA. These same contentions were reiterated by the appellant as its exclusive basis for asserting that permission of the landfill would offend Article I, § 27 of the state constitution.
The Board preliminarily questioned whether the Commission, as a sister agency of DER in the Commonwealth governmental structure, had standing to challenge DER's issuance of the waste permit. Subsequently, in a pre-hearing *125 ruling, the Board determined that the Commission did have standing to prosecute the appeal.
After conducting hearings de novo, the Board entered an extensive written adjudication in which it rejected each of the Commission's challenges on the merits, and sustained the issuance of the permit to Ganzer. With particular regard to the arguments based on the Dam Safety and Encroachments Act, the Board found as a matter of fact that no streams or drainage courses run through the landfill site, and that the site was higher in elevation than any neighboring watercourses and the wetlands constituting the Commission's wildlife refuge. On the strength of those findings, the Board concluded that the Ganzer landfill would not create a "water obstruction" as that term is defined by the DSEA,[4] and thus, that the statute was not applicable to the case.
With the rejection of the Commission's assertions under the DSEA, so too failed its argument pursuant to the environmental rights article of the Pennsylvania Constitution, since the constitutional challenge was based exclusively on the appellant's contentions regarding the DSEA. Although it is clear from the record that the Board's resolution of the DSEA argument was based on its conclusion that the statute did not apply to the case, the Board articulated that result by loosely stating that the Commission did not have "standing" to make the statute an issue.
It should be emphasized that the Board's adjudication sustaining the Ganzer permit was not restricted to a determination that the Commission had not met its burden of proof and that its particular legal challenges lacked efficacy. The Board went further and gauged the propriety of the solid waste permit under the governing environmental statutes, and under the environmental article of our state constitution. After making extensive findings of fact based *126 on the evidence, the Board determined that the proposed landfill would not have an adverse impact on the environment and that permitting the landfill was otherwise in compliance with the law.
In response to the Board's decision, the Commission filed a petition for review with the Commonwealth Court. Although it is clear from the Board's adjudication that the Commission was actually accorded standing to press its challenges, the Commission, in its appeal to the Commonwealth Court, included an assertion that it had been denied "standing" to raise the DSEA as an issue before the administrative tribunal.
As noted at the outset, the Commonwealth Court affirmed the Board's adjudication. In so deciding, the intermediate appellate court put forth two alternative grounds. The court first concluded that the Commission lacked standing to raise the DSEA, as a basis for challenging the Ganzer permit. The court then proceeded to also decide that, even if the Commission did have the requisite standing, the Board's adjudication had to be sustained under the standard of judicial review prescribed by section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.
We will consider first the Commonwealth Court's conclusion that the Game Commission lacked standing to use the DSEA as a ground for challenging the permit issued by DER. The reasoning of the Commonwealth Court on this point is not altogether clear, but it seems to have at its core a determination that the purposes of the DSEA have nothing to do with the functions of the Commission, i.e., protecting wildlife. Based on that premise, the court decided that the Commission could not be "aggrieved" by DER's non-enforcement of the DSEA and thus had no legal standing to make an issue of it. Having concluded that the Commission lacked standing to raise the DSEA itself, the Commonwealth Court added that the absence of standing was not cured by the Commission's attempt to reiterate its DSEA argument under Article I, § 27 of the Pennsylvania Constitution. For the reasons that follow, it *127 is our view the Commonwealth Court erred in its holding as to the Commission's standing.
The concept of "standing," in its accurate legal sense, is concerned only with the question of who is entitled to make a legal challenge to the matter involved. Sprague v. Casey, 520 Pa. 38, 550 A.2d 184 (1988); Application of Biester, 487 Pa. 438, 409 A.2d 848 (1979); Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269 (1975); Keystone Raceway Corp. v. State Harness Racing Commission, 405 Pa. 1, 173 A.2d 97 (1961); Department of Labor and Industry v. Unemployment Compensation Review Board, 362 Pa. 342, 67 A.2d 114 (1949). As a general matter, the core of the concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no right to obtain a judicial resolution of his challenge. E.g., Independent State Store Union v. Pennsylvania Liquor Control Board, 495 Pa. 145, 432 A.2d 1375 (1981); see Pierro v. Pierro, 434 Pa. 131, 252 A.2d 652 (1969); Louden Hill Farm, Inc. v. Milk Control Commission, 420 Pa. 548, 217 A.2d 735 (1966); Department of Labor and Industry, supra.
With regard to actions or decisions of state administrative agencies, section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702, mandates that a person's right to obtain judicial review depends upon his having a direct interest in the agency's action and being aggrieved thereby. In re Family Style Restaurant, Inc., 503 Pa. 109, 468 A.2d 1088 (1983); Susquehanna County v. Department of Environmental Resources, 500 Pa. 512, 458 A.2d 929 (1983); Franklin Township v. Department of Environmental Resources, 500 Pa. 1, 452 A.2d 718 (1982); Application of El Rancho Grande, 496 Pa. 496, 437 A.2d 1150 (1981). A substantially similar definition of "standing" has been legislatively provided with respect to administrative appeals to the Environmental Hearing Board from actions of DER. To have "standing" in that context, section 1921-A of the Administrative Code of 1929, supra, requires that the complainant *128 be "adversely affected" by the DER action in question. 71 P.S. § 510-21 (Supp.1988).
Although our law of standing is generally articulated in terms of whether a would-be litigant has a "substantial interest" in the controverted matter, and whether he has been "aggrieved" or "adversely affected" by the action in question, we must remain mindful that the purpose of the "standing" requirement is to insure that a legal challenge is by a proper party, Application of Biester, supra. The terms "substantial interest", "aggrieved" and "adversely affected" are the general, usual guides in that regard, but they are not the only ones. For example, when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters. From this it must follow that, unless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns. In such circumstances the legislature has implicitly ordained that such an agency is a proper party litigant, i.e., that it has "standing." An instructive illustration of this point is the case of Chapman v. Federal Power Commission, 345 U.S. 153, 73 S.Ct. 609, 97 L.Ed. 918 (1953), in which the United States Supreme Court held that the Secretary of Interior had standing to challenge an order of the Federal Power Commission licensing a new hydroelectric generating station. The Court's decision was based on the fact that the action of the Power Commission impacted upon the Department of Interior's statutorily mandated role as the marketer of excess hydroelectric power and its general statutory duties relating to the conservation of the nation's water resources. We find Chapman to be a sound principle for resolving certain questions of standing that may arise in our jurisdiction.
In the instant case, the Commonwealth Court negated the Game Commission's standing to raise the DSEA by concluding that the statute had nothing to do with the Commission's statutory functions. That determination is patently erroneous.
*129 The powers and duties of the Commission are set forth in the Game and Wildlife Code ("Code"), 34 Pa.C.S. § 101 et seq. Section 103(a) of the Code states that "ownership, jurisdiction over and control of game or wildlife is vested in the [C]ommission as an independent agency of the Commonwealth.. . ." 34 Pa.C.S. § 103(a). Another section of the Code provides that the Commission, as an agency of the Commonwealth, is "authorized to regulate, protect, propagate, manage and preserve game or wildlife. . . ." 34 Pa.C.S. § 2161(b) (emphasis added). With respect to state-owned game lands or waters as such, section 706 of the Code mandates that title to such property shall be in the name of the Commonwealth "solely for the use of the [C]ommission." 34 Pa.C.S. § 706.
It is clear from the above that the Game Commission has a substantial interest in the lands and wildlife under its control. This alone would be sufficient to give it standing to legally challenge any action which allegedly would have an adverse impact on those interests. However, of particular significance to the instant case is section 2161(c) of the Code, which provides in pertinent part as follows:
Concurrent authority  The Commission shall have concurrent authority to enforce . . . the Dam Safety and Encroachments Act, and the regulations thereto, with respect to encroachments and water obstructions . . . if a violation would, in the opinion of the [c]ommission, negatively impact upon a swamp, marsh or wetland.

34 Pa.C.S. § 2161(c) (emphasis added).
This provision is a clear legislative recognition that the DSEA has a relationship to the functions and interests of the Commission, and it expressly gives the Commission the power to enforce the DSEA where a violation of it would adversely impact upon the property under the Commission's control. We therefore conclude that the Commission had standing to raise the DSEA in its challenge to DER's issuance of the solid waste permit in this case.
Although we reject the Commonwealth Court's holding as to the Commission's standing, we agree with that *130 court's alternative conclusion that the Board's adjudication had to be affirmed on the merits. As the Commonwealth Court correctly observed, judicial review of such an adjudication is narrow in scope. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, dictates that judicial review is restricted to a determining whether there has been an error of law or a violation of constitutional rights, and whether any finding of fact necessary to the adjudication is unsupported by substantial evidence. E.g., Wiley House v. Scanlon, 502 Pa. 228, 465 A.2d 995 (1983); Norfolk and Western Ry. v. Pennsylvania Public Utility Commission, 489 Pa. 109, 413 A.2d 1037 (1980); Willowbrook Mining Co. v. Department of Environmental Resources, 92 Pa.Commw. 163, 499 A.2d 2 (1985); Einsig v. Pennsylvania Mines Corp., 69 Pa.Commw. 351, 452 A.2d 558 (1982). Absent any of those infirmities, an adjudication by a state administrative agency must be affirmed by the courts. 2 Pa.C.S. § 704. Our review of the record in this case convinces us that the Board's adjudication in this matter is not judicially disturbable under the governing scope of review.
For the reason last mentioned, the order of the Commonwealth Court is affirmed.
LARSEN, J., joins in this opinion and files a concurring opinion in which PAPADAKOS, J., joins.
ZAPPALA, J., files a concurring opinion.
LARSEN, Justice, concurring.
I join in the majority opinion. There is no question that the Pennsylvania Game Commission has standing under our constitution, statutes and caselaw to challenge the issuance of a solid waste permit by the Department of Environmental Resources (DER) for the establishment and operation of a solid waste landfill, where said landfill could potentially affect wetland property (known as Siegel Marsh) maintained and protected by the Commission as a waterfowl refuge. The Commission is a Commonwealth agency explicitly *131 charged by statute with the obligation and authority to regulate, protect, manage and preserve the game or wildlife of this Commonwealth and the lands and waters entrusted to the care of the Commission, specifically including (but not limited to) the enforcement of the Dam Safety and Encroachments Act where an encroachment or water obstruction would negatively impact upon a swamp, marsh or wetland. 34 Pa.C.S.A. § 2161(c).
As one of this Commonwealth's trustees of our natural resources and the public estate under Article I, section 27 of our Constitution, the Commission must have standing to take whatever legal action is necessary and appropriate to "conserve and maintain" our "clean air, pure water," and "the natural, scenic, historic and esthetic values of the environment" where threats to game or wildlife and to waterways and lands acquired and managed by the Commission arise.
I also agree with the majority that, under our standard of review, the decision of the Environmental Hearing Board affirming the grant of a solid waste permit by DER should be affirmed. That decision was adequately supported by the record, did not commit an error of law and did not violate any constitutional rights. I write separately, however, to emphasize that the Commission's standing does not cease once the solid waste permit has been granted and affirmed on appeal.
On the contrary, the Commission retains the authority and the obligation to protect, preserve and maintain the Siegel Marsh wetlands and its inhabitants. Should the Commission, at some point in the future, detect environmental damage to Siegel Marsh or its inhabitants which, in the Commission's reasoned opinion, is caused by operation of the landfill, the Commission will have standing to petition DER to suspend or modify its landfill permit in accordance with the provisions of the Solid Waste Management Act, see section 503(c) and (e), Act of July 7, 1980, P.L. 380, No. 97, *132 35 P.S. § 6018.503(c) and (e), or to take appropriate action in the courts of this Commonwealth to abate pollution and/or nuisances, see id at section 607, 35 P.S. § 6018.607.
PAPADAKOS, J., joins in this concurring opinion.
ZAPPALA, Justice, concurring.
I concur in the result. I would hold that the Pennsylvania Game Commission did not have standing to raise the violations of the Dam Safety and Encroachment Act. I do not agree with the majority's suggestion that the Commonwealth Court's reasoning underlying its conclusion that the Commission lacked standing is unclear. I believe the statement of its rationale is readily understood and is, in fact, correct.
The Commonwealth Court reasoned that,
Looking to the DSEA itself, it is difficult to conclude that it has the preservation of wildlife as one of its central concerns. Sections 2(1), 2(3), and 2(4) of the Act specify that people and property, natural resources, and water obstructions are among the concerns of the Act. Of course, wildlife are dependent for their continuing viability upon the natural resources of their ecosystem and habitat, but it is an illogical jump for us to proceed from this premise and conclude that as trustee of game wildlife in the Commonwealth, the Game Commission has standing under the DSEA to insure the maintenance of all natural resources required to sustain its faunal wards. Such a conclusion would give every Commonwealth agency the right to intervene in another agency's proceedings, so long as the interest concerned was a "prerequisite" to the health or well-being of the interest entrusted to the rival agency.
This approach ignores the requirement of showing a direct, immediate, and substantial interest in the matter to be adjudicated. Such a requirement must be met by *133 specific pleadings in at least some circumstances. Here, the Game Commission would have been required to show that violations of the DSEA bore a direct, immediate, and substantial relation to its status as a trustee of the Commonwealth's wildlife. Our review of the record indicates that the Game Commission failed to plead sufficient facts or law in support of its conclusion that it had standing.
Com., Pennsylvania Game Commission v. Com., Pennsylvania Department of Environmental Resources, 97 Pa. Cmwlth. 78, 509 A.2d 877, 881 (1986) (footnote deleted.).
The majority interprets the Commonwealth Court's decision as ". . . at its core a determination that the purposes of the DSEA have nothing to do with the functions of the Commission, i.e., protecting wildlife." (Slip opinion at 6). The majority misunderstands. The Commonwealth Court was pointing out that the Commission's general interest in preserving wildlife was insufficient without more to confer standing to challenge alleged violations of the DSEA.
To establish the requirements of standing, the party, to be aggrieved, must have a direct, immediate and substantial interest in the matter to be adjudicated, and there must be a direct causal connection between the act complained of and the harm alleged. William Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269 (1975). The Commission simply failed to establish that it had a "direct, immediate and substantial interest" in the controversy.
I disagree also with the majority that its conclusion is bolstered by 34 Pa.C.S. § 2161(c) which grants concurrent authority to enforce the DSEA with respect to encroachments and water obstructions if the violation would negatively impact upon a swamp, marsh or wetland. This provision grants concurrent authority to enforce the DSEA against violators to the Commission. It is inconclusive, however, on the question of whether the Commission may intervene in DER's proceedings.
NOTES
[1] Act of July 7, 1980, P.L. 380, as amended, 35 P.S. § 6018.101 et seq. (Supp.1988).
[2] Act of April 9, 1929, P.L. 177, as amended, 71 P.S. § 1 et seq. Section 1921-A of the Code was added by the Act of December 3, 1971, P.L. 834, 71 P.S. § 510-21 (Supp.1988). Section 1921-A(c) provides that an action of the Department of Environmental Resources "adversely affecting any person" shall be appealable by such person to the Environmental Hearing Board. Section 1921-A also provides that the hearings and adjudications of the Board shall be in accordance with the Administrative Agency Law, 2 Pa.C.S. §§ 501-508, 701-704.
[3] Act of November 26, 1978, P.L. 1375, as amended, 32 P.S. § 693.1, et seq. (Supp.1988).
[4] Section 693.3 of the DSEA defines "water obstruction" as including "any dike, bridge, culvert, wall, wing wall, fill, pier, wharf embankment, abutment or other structure located in, along, across or projecting into any watercourse, floodway or body of water." 32 P.S. § 693.3.