**In re EXPUNGEMENTS, Appeal of Pennsylvania State Police.**

Superior Court of Pennsylvania.

Argued May 2, 2007.
Filed Dec. 12, 2007.

Thomas J. Rozman, Harrisburg, for appellant.

Leo E. Gribbin, Jr., York, for appellee.

BEFORE: STEVENS, KLEIN, and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 The Pennsylvania State Police appeals from the Order entered on August 22, 2006, in the Court of Common Pleas of Adams County, which denied its petition for reconsideration, based upon lack of standing. After careful review, we reverse and remand.

¶ 2 On December 20, 2005, Appellee, Stephen A. Grable, filed a petition to expunge record and return weapons pursuant to the Pennsylvania Uniform Firearms Act, 18 PA. CONS.STAT.ANN. §§ 6101–6162.[1] Grable's firearms, i.e., a Smith & Wesson revolver and an 8–millimeter Mauser rifle,

---

1. In reference to the issues in this case, Section 6105 of the Uniform Firearms Act, 18 PA. CONS.STAT.ANN. § 6105, provides, in pertinent part:

   **Persons not to possess, use, manufacture, control, sell or transfer firearms**
   **(a) Offense defined.—**
   (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.
   (2)(i) A person who is prohibited from possessing, using, controlling, selling, transferring or manufacturing a firearm under paragraph (1) or subsection (b) or (c) shall have a reasonable period of time, not to exceed 60 days from the date of the imposition of the disability under this subsection, in which to sell or transfer that person's firearms to another eligible person who is not a member of the prohibited person's household.
   (ii) This paragraph shall not apply to any person whose disability is imposed pursuant to subsection (c)(6).
   . . .
   (c) **Other persons.**—In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):
   . . .
   (4) A person who has been adjudicated as an incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304 of the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act. This paragraph shall not apply to any proceeding under section 302 of the Mental Health Procedures Act unless the examining physician has issued a certification that inpatient care was necessary or that the person was committable.
   . . .
   (6) A person who is the subject of an active protection from abuse order issued pursuant to 23 Pa.C.S. § 6108, which order provided for the relinquishment of firearms during the period of time the order is in effect. This prohibition shall terminate upon the expiration or vacation of an active protection from abuse order or portion thereof relating to the relinquishment of firearms.
   . . .
   (e) **Proceedings.**—
   (1) If a person convicted of an offense under subsection (a),(b) or (c)(1), (2), (5), (7) or (9) makes application to the court, a hearing shall be held in open court to determine whether the requirements of this section have been met. The commissioner and the district attorney of the county where the application is filed and any victim or survivor of a victim of the offense upon which the disability is based may be parties to the proceeding.
   (2) Upon application to the court of common pleas pursuant to paragraph (1) by an applicant who is subject to the prohibition under subsection (c)(3), the court shall grant such relief if a period of ten years, not including any time spent in incarceration, has passed since the applicant's most recent conviction under subsection (c)(3).
   (f) **Other exemptions and proceedings.**—
   (1) Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under

were seized by the Adams County Sheriff's Department, as a consequence of a Protection from Abuse order.

¶ 3 The PFA order was the result of an incident which occurred on March 15, 2003. On that date, Grable, who was involved in a tumultuous relationship with his former girlfriend, attempted suicide by drug overdose of her medications, Klonopin and Nortriptyline. After she had discovered Grable unconscious in his apartment, his former girlfriend found a suicide note, which was also recovered by the paramedics. Grable was taken to Hanover Hospital and treated in the emergency room. Upon the recommendation of Hanover Hospital, Grable was involuntarily committed to Philhaven on March 16, 2003, for emergency examination and treatment pursuant to Section 302 of the Mental Health Procedures Act of 1976, 50 Pa.Stat. § 7302. In the Discharge Summary issued by Philhaven on March 21, 2003, the staff psychiatrist explained the reasons for the initial commitment:

> Stephen Grable is a 44–year–old male admitted to Philhaven on a 302 emergency involuntary commitment from Adams/Hanover Counseling Services after treatment at Hanover Hospital for an overdose of medications. The precipitant was that his girlfriend of seven years told him "I reached the saturation point" and ended their relationship. The patient admitted that he has an "attitude problem." He said he complains about projects around the house and said that his coworkers avoid him. However, he cannot understand why his girlfriend told him never to bother her again because "I finally began to seek help." He has had no prior psychiatric history or treatment. When seen for admission the patient was sullen, angry, and depressed. He did contract for safety in the hospital saying "I never meant to kill myself." There was no evidence of psychotic symptoms.

Grable was subsequently released from Philhaven on March 21, 2003.

■ ¶ 4 The PFA order expired on October 1, 2004. In a letter dated May 30, 2005, Grable requested the return of his firearms from the Adams County Sheriff, arguing that the conditions of the PFA order had been satisfied. Thereafter, on June 9, 2005, the trial court entered an

---

subsection (c)(4), the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person.

(2) If application is made under this subsection for relief from the disability imposed under subsection (c)(6), notice of such application shall be given to the person who had petitioned for the protection from abuse order, and such person shall be a party to the proceedings. Notice of any court order or amendment to a court order restoring firearms possession or control shall be given to the person who had petitioned for the protection from abuse order, to the sheriff and to the Pennsylvania State Police. The application and any proceedings on the application shall comply with 23 Pa.C.S. Ch. 61 (relating to protection from abuse).

(3) All hearings conducted under this subsection shall be closed unless otherwise requested to be open by the applicant.

. . .

(i) **Firearm.**—As used in this section only, the term *"firearm"* shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon.

(j) **Copy of order to State Police.**—If the court grants relief from the disabilities imposed under this section, a copy of the order shall be sent by the prothonotary within ten days of the entry of the order to the Pennsylvania State Police and shall include the name, date of birth and Social Security number of the individual.

order directing that the "Adams County Sheriff may return any firearms seized from the Defendant to the Defendant provided there is no legal disability preventing the Defendant from possessing a firearm." On July 5, 2005, the Pennsylvania State Police, following a review under the Pennsylvania Instant Check System ("PICS"), denied Grable's request for the return of his weapons. The denial was due to a provision under the Pennsylvania Uniform Firearms Act, 18 PA. CONS.STAT. ANN. § 6105(c)(4), which prohibited Grable from possessing a firearm following his involuntary commitment to a mental institution under Sections 302 and 303 of the Mental Health Procedures Act of 1976, 50 PA.STAT. §§ 7302 & 7303. Grable then petitioned the trial court pursuant to 18 PA. CONS.STAT.ANN. § 6105(f)(1) for removal of

the disability imposed under Section 6105(c)(4).[2]

¶ 5 Following a hearing held on February 14, 2006, the transcript of which is not included in the certified record, the trial court entered an order which removed the disability imposed under Section 6105(c)(4). Moreover, in its February 14, 2006 order, the trial court stated that Grable "may possess a firearm without risk to the applicant or any other person." The order further directed that the Adams County Sheriff's Department was to return to Grable any firearms or other items seized at the time of the entry of the PFA order "provided the Petitioner suffers no other legal disability which will prohibit him from possession of firearms."

¶ 6 The Pennsylvania State Police was not given prior notice of the hearing and as such, was not in attendance.[3] However,

---

**2.** Grable captioned his petition, filed on December 20, 2005, as one for expungement; however, a petition for relief from a firearm disability under 18 PA. CONS.STAT.ANN. § 6105 is not an expungement proceeding. *Pennsylvania State Police v. Paulshock*, 575 Pa. 378, 385–386, 836 A.2d 110, 114–115 (2003)("[T]he only relief that can be given pursuant to a petition filed under Section 6105(d) is from the firearm disability that is imposed pursuant to Section 6105(a)."). Orders for expungement are statutorily proscribed pursuant to the Criminal History Record Information Act, 18 PA. CONS.STAT.ANN. § 9122(b), and only *conviction* records may be expunged where: 1) the subject of the information reaches the age of seventy and has been free from arrest or prosecution for ten years; or 2) where the individual has been dead for three years. *See Commonwealth v. Charnik*, 921 A.2d 1214, 1217 (Pa.Super.2007). Because Grable's disability was not based on a criminal conviction, 18 PA. CONS.STAT.ANN. § 9122 is not applicable in this case.

However, an individual with a disability under 18 PA. CONS.STAT.ANN. § 6105(c)(4) may petition the trial court for expungement of records of involuntary treatment pursuant to 18 PA. CONS.STAT.ANN. § 6111.1(g). *See, e.g., In re R.F.*, 914 A.2d 907, 916 (Pa.Super.2006),

*appeal denied*, 593 Pa. 741, 929 A.2d 1162 (2007). Although Grable requested that his mental health records be expunged in his petition filed on December 20, 2005, he did not request relief under § 6111.1(g), no evidence was admitted in relation to the issues relevant to expungement, the trial court did not discuss expungement in its decision, and the trial court did not grant expungement in its order of February 14, 2006.

**3.** In its order of January 9, 2006, the trial court ordered Grable to serve a copy of the petition on, among others, the Pennsylvania State Police. There was no dispute that Grable's counsel did not serve the petition, nor provide notice of the hearing date, on the Pennsylvania State Police. At the conference held on June 30, 2006, when requested by the trial court to respond to the State Police's assertion that it had not been served, counsel for Grable merely said that "I really don't know, Your Honor." Transcript, 6–30–06, at 3. The trial court went on to state, on the record, that it was aware prior to the hearing that the State Police had not been served with a copy of the petition. *Id.* The noncompliance by Grable's counsel with the trial court's order is disturbing.

Not surprisingly, the docket entries indicate that the only witness called at the hearing

notice of the order removing Grable's disability under 18 PA. CONS.STAT.ANN. § 6105(c)(4), although untimely,[4] was provided to the State Police after which, the State Police filed a motion for reconsideration. Following a conference with the trial court on June 30, 2006, the motion for reconsideration was denied.

¶ 7 On appeal, the Pennsylvania State Police raises the following issue for our review:

> Does a government agency, which is vested by statute with extensive administrative and enforcement responsibilities, have standing to oppose a petition for relief from the enforcement of provisions imposed by the statute administered and enforced by the government agency?

*See* Appellant's Brief, at 3.

■ ¶ 8 As the Supreme Court of Pennsylvania announced in *In re T.J.*, 559 Pa. 118, 739 A.2d 478 (1999), "standing is a requirement that parties have sufficient interest in a matter to ensure that there is a legitimate controversy before the court." *Id.*, 559 Pa. at 124, 739 A.2d at 481. When determining whether a party has standing, we must be concerned only with "who is entitled to make a legal challenge" and "not the merits of that challenge." *Id.*, citing *Sprague v. Casey*, 520 Pa. 38, 43–44, 550 A.2d 184, 187 (1988). The crux of our review is that "a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' and has no right to obtain a judicial resolution of his challenge." *In re T.J.*, 559 Pa. at 125, 739 A.2d at 481, *quoting Independent State Store Union v. Pennsylvania Liquor*

*Control Board,* 495 Pa. 145, 154, 432 A.2d 1375, 1379–1380 (1981).

¶ 9 Furthermore, in *Commonwealth, Pennsylvania Game Commission v. Commonwealth, Department of Environmental Resources,* 521 Pa. 121, 555 A.2d 812 (1989) the Supreme Court of Pennsylvania specifically addressed the issues involved when a governmental agency alleges that it has standing in a case. In *Pennsylvania Game Commission,* the Supreme Court specifically discussed the standard to utilize in deciding whether a governmental agency is granted standing other than through an explicit grant by the legislature. The Court stated:

> [a]lthough our law of standing is generally articulated in terms of whether a would-be litigant has a "substantial interest" in the controverted matter, and whether he has been "aggrieved," … we must remain mindful that the purpose of the "standing" requirement is to insure that a legal challenge is by a proper party. The terms "substantial interest" [and] "aggrieved" … are the general, usual guides in that regard, but they are not the only ones. For example, *when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters.* From this it must follow that, *unless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns.* In such circumstances the legislature has implicitly ordained that such an agency is a

---

held on February 14, 2006, was the petitioner, Stephen Grable.

4. The trial court notes that: "[d]espite direction by the Court that the February 14, 2006 Order be served on the Pennsylvania State Police, the Order was not properly

served on that agency by the Clerk of Courts. Accordingly, although thirty days had expired between the time of entry of the Order and the State Police's Motion for Reconsideration, this Court shall consider the same timely." Trial Court Opinion, 8/22/06 n. 1.

proper party litigant, i.e. that it has "standing".

521 Pa. at 128, 555 A.2d at 815 (citations omitted)(emphasis added). *See also, In re T.J.,* 559 Pa. at 125, 739 A.2d at 482.

¶ 10 In *Pennsylvania State Police v. Paulshock,* 575 Pa. 378, 382, 836 A.2d 110 (2003), the Supreme Court of Pennsylvania found standing in the Pennsylvania State Police in a similar case, albeit procedurally different, regarding a challenge to a trial court's determination regarding relief from a firearms disability. In *Paulshock,* after two trial courts had relieved the appellees from disability from purchasing, owning or using firearms, including a disability that arose from operation of the Federal Gun Control Act of 1998, 18 U.S.C. § 922, the Pennsylvania State Police eventually filed petitions for review in the Commonwealth Court of Pennsylvania from decisions rendered by the Office of Attorney General. The Attorney General's Office had upheld the trial courts' authority to relieve the appellees from disabilities invoked under the Federal Act. In reversing the Commonwealth Court, the Supreme Court held that the trial courts of Pennsylvania could not effectuate the removal of a Federal firearms disability.

¶ 11 In response to the challenge of lack of standing raised by the appellees against the Pennsylvania State Police in *Paulshock,* the Supreme Court, upon reviewing the legislative functions, duties and responsibilities of the Pennsylvania State Police, easily found proper standing:

> Both Paulshock and Reed argue that the State Police do not have standing. However, the State Police never challenged the common pleas court decisions, it simply refused to remove the firearms disability under the federal act. Reed and Paulshock then brought a challenge with the OAG, naming the State Police as a respondent, claiming that the State Police were refusing to comply with the common pleas court orders of expungement and/or relief from firearms disability. *See* R.R.46a, 359a (Attorney General's hearing notice letters to Appellees acknowledging State Police as respondent). Moreover, the State Police are, based on Pennsylvania law, required to honor and enforce a federal firearms disability:

> (b) Duty of Pennsylvania State Police.—

> (1) Upon receipt of a request for a criminal history, juvenile delinquency history and mental health record check of the potential purchaser or transferee, the Pennsylvania State Police shall immediately during the licensee's call or by return call forthwith:

> (i) review the Pennsylvania State Police criminal history and fingerprint records to determine if the potential purchaser or transferee is prohibited from receipt or possession of a firearm under Federal or State law;

> 18 Pa.C.S. § 6111.1. Appellees' argument that the State Police lack standing in this matter is meritless. *See generally In re T.J.,* 559 Pa. 118, 739 A.2d 478, 482 (1999)("when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters").

*Paulshock,* 575 Pa. at 382 n. 4, 836 A.2d at 113 n. 4.

■ ¶ 12 Applying the foregoing principles to the present case, we have little difficulty finding standing in the Pennsylvania State Police. The State Police is an administrative agency in the Commonwealth of Pennsylvania which the legislature has vested with the broad authority and responsibility of administering the

provisions of the Uniform Firearms Act. *See* 18 PA. CONS.STAT.ANN. § 6111.1(a). Specifically, under the Act, the State Police is vested with the responsibility of:

- ensuring that purchasers or transferees of firearms in the Commonwealth, as well as those persons applying for a license to carry firearms, are legally entitled to possess or transfer firearms, 18 PA. CONS.STAT.ANN. § 6124 & § 6111.1(b)(1);
- administering the Pennsylvania Instant Check System ("PICS"), an instant background check system used by firearms dealers and sheriffs to ensure that applicants for the purchase of firearms or a license to carry firearms are not prohibited persons under either state or Federal law, 18 PA. CONS.STAT.ANN. § 6111.1(b)(3);
- conducting a PICS check by reviewing an applicant's criminal history, fingerprint records, juvenile delinquency records and mental health records, in order to determine if the applicant is prohibited from receiving or possessing a firearm under Federal or State law, 18 PA. CONS.STAT.ANN. § 6111.1(b)(1)(i)-(iii);
- providing licensed firearms dealers or sheriffs with an approval number for the applicant, 18 PA. CONS.STAT.ANN. § 6111.1(b)(1)(iii);
- ruling on challenges to an applicant's PICS denial if the PICS check indicates that the person is prohibited from possessing or receiving a firearm, 18 PA. CONS.STAT.ANN. § 6111.1(e);
- distributing summaries of the Uniform Firearms Act and firearm safety brochures to the public, 18 PA. CONS.STAT. ANN. § 6111.1(d);
- adopting rules and regulations that are necessary for carrying out the provisions of the Uniform Firearms Act, 18 PA. CONS.STAT.ANN. § 6111.5; and

- reviewing mental health records to determine whether the potential purchaser or transferee is prohibited from receipt or possession of a firearm under Federal or State law, 18 PA. CONS. STAT.ANN. § 6111.1(b)(1)(ii).

¶ 13 Here, Grable petitioned the trial court for the expungement of the records of his involuntary commitment in an attempt to remove the state disability imposed by 18 PA. CONS.STAT.ANN. § 6105(c)(4), relating to a person who has been "adjudicated as an incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment under ... the Mental Health Procedures Act." In such a proceeding, the lower court "may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person." 18 PA. CONS.STAT.ANN. § 6105(f)(1).

■ ¶ 14 While the Pennsylvania State Police is not explicitly granted standing in a proceeding pursuant to Section 6105(f)(1) to remove a disability imposed under Section 6105(c)(4), it has an implicit power to be a litigant in this type of proceeding. As discussed above, the legislature has statutorily conferred the State Police with responsibilities and duties under several provisions of the Uniform Firearms Act. The State Police's interest in these proceedings is linked to its ability to perform its administrative responsibilities under the Firearms Act and, more importantly, to ensure public safety and welfare by keeping firearms out of the hands of dangerous individuals.

¶ 15 Accordingly, based upon the broad responsibilities and powers conferred upon it by the legislature, and its vital interest in protecting the safety of the citizens of the Commonwealth, it is a logical corollary

that the Pennsylvania State Police be granted standing to challenge an attempt to remove a Section 6105(C)(4) disability.

¶ 16 This decision is limited to the issue of standing, and nothing herein is intended to address the merits of Grable's petition.

¶ 17 Order reversed and remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.