IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Honorable Vaughn D. Spencer, :
Mayor of the City of Reading :
 :
v. : No. 1865 C.D. 2013
 : Argued: May 13, 2014
City of Reading Charter Board, :
 Appellant :


BEFORE:  HONORABLE MARY HANNAH LEAVITT, Judge
         HONORABLE P. KEVIN BROBSON, Judge
         HONORABLE ANNE E. COVEY, Judge


OPINION
BY JUDGE LEAVITT                            FILED: August 8, 2014

         The City of Reading Charter Board (Charter Board) appeals an order
of the Court of Common Pleas of Berks County (trial court) that set aside the
Charter Board's imposition of sanctions upon The Honorable Vaughn D. Spencer,
Mayor of the City of Reading, for performing the duties of the City's Managing
Director at a time that position was vacant.  The Charter Board claims the trial
court did not apply the proper standard of review; erred by substituting its own
judgment for that of the Charter Board; and misconstrued an advisory opinion of
the Charter Board.  Mayor Spencer has filed a motion to quash, asserting the
Charter Board lacks standing to appeal.  We deny Mayor Spencer's motion to
quash and affirm the trial court.

## Background

         The City of Reading is governed by a Home Rule Charter.  The chief
executive is the Mayor, who is vested with the "executive, administrative, and law

enforcement powers of the City … [and] shall control and be accountable for the executive branch of City government[.]" CHARTER FOR THE CITY OF READING, COMMONWEALTH OF PENNSYLVANIA (2010) §301 (Charter); Reproduced Record at 119a (R.R. ___). The Charter also established the position of Managing Director, who serves as the City's chief administrative officer. CHARTER §406; R.R. 125a. The Managing Director reports to the Mayor and "may be removed from office by the Mayor at any time, without cause." CHARTER §404(a); R.R. 124a.

On January 2, 2012, Mayor Spencer took office. At that time, Carl Geffken served as Managing Director. Geffken tendered his resignation effective March 15, 2012. At a City Council meeting on March 12th, the Council inquired of the Mayor who would be performing Geffken's Managing Director duties until the position was filled. The Mayor responded that he would assume responsibility for those duties in the interim. None of the Council members objected to the Mayor's response.

Thereafter, Mayor Spencer nominated Scott Hoh to be Managing Director. On April 2, 2012, City Council rejected Hoh's appointment. From March 15th through July 4th, when the City did not have a Managing Director, Mayor Spencer performed the Managing Director's job duties. The Mayor did not seek compensation for performing the Managing Director duties; he was paid only the compensation to which he was entitled as Mayor. On May 29, 2012, City Council confirmed Carole Snyder as the new Managing Director. Her effective date of hire was July 5, 2012.

On June 18, 2012, the Charter Board received a complaint from Randy Corcoran, a City taxpayer and member of City Council, challenging the actions taken by Mayor Spencer while acting as Managing Director. The Charter

2

Board's investigative officer, David Brennen, investigated the complaint and concluded that the Mayor had violated the Charter and the City's Administrative Code by doing the work of both positions simultaneously. The Mayor requested an evidentiary hearing, which was held before the Charter Board.

The essential facts were not in dispute. Mayor Spencer admitted that he acted as Mayor and Managing Director from March 15th through July 4, 2012. As such, he performed certain administrative tasks of a Managing Director, such as issuing directives relating to non-exempt employees, the purchase of professional services and the transfer of City funds. Under the Charter, the Mayor supervises the Managing Director, but the Charter does not extend this supervisory authority to the point that the Mayor can actually serve as Managing Director. Mayor Spencer asserted that doing the work of both positions simultaneously was not prohibited by the Charter or the City's Administrative Code. Further, he had to do the duties of the Managing Director position because the Charter did not authorize the appointment of a Temporary Managing Director during the time period that he acted as Managing Director. He based this conclusion on the Charter Board's Advisory Opinion No. 22, issued on November 18, 2010.

Following the hearing, the Charter Board concluded that the Charter and the Administrative Code require that the offices of Mayor and Managing Director be separate and that the Mayor "impermissibly took the power, mantel [sic] and authority of the Managing Director." Charter Board Final Opinion and Order at 27; R.R. 590a. Specifically, the Charter Board concluded that Mayor Spencer violated Section 308(a), (f), (g), (h), and (i) of the Charter[1] by combining

_____

[1] Section 308 provides, in relevant part:

The Mayor shall have the following powers and duties:
**(Footnote continued on the next page . . .)**

3

the power, person, and the offices of Mayor and Managing Director; Section 406(3) of the Charter[2] by exercising the duties conferred on the Managing Director; and Section 401 of the Charter by not appointing a Temporary Managing Director after City Council refused to confirm Hoh.  Section 401 of the Charter provides, in relevant part:

> (a)  Within ninety (90) days of taking office, the Mayor, with the approval of City Council, shall appoint a Managing Director for an indefinite term, subject to at least a biennial review, and fix the Managing Director's compensation. The Managing Director need not be a resident of the City at the time of appointment, but after appointment shall

---

**(continued . . .)**

> (a)  Execute, enforce, and obey the ordinances of the City and laws of the Commonwealth of Pennsylvania and the United States of America.
>
> ***
>
> (f)  Be responsible for the hiring, with the approval of Council, of the City Managing Director.
>
> (g)  Direct and supervise the administration of all departments, offices and agencies of the City, except as otherwise provided by the Charter or by law.
>
> (h)  Ensure that all laws, provisions of this Charter and acts of City Council, subject to enforcement by the Managing Director, are faithfully executed by the Managing Director.
>
> (i)  Be responsible for the establishment and development of administrative policy to be implemented by the Managing Director.

CHARTER §308(a), (f), (g), (h) and (i); R.R. 121a-122a.

[2] Section 406(3) provides, in relevant part:

> The Managing Director shall be the chief administrative officer of the City, responsible to the Mayor for the administration of all City affairs placed in the Managing Director's charge pursuant to this Charter. In addition to other powers and duties prescribed by this Charter, the Managing Director shall:
>
> ***
>
> (3)  Appoint, suspend, or remove any City employee, except as otherwise provided by this Charter or by law[.]

CHARTER §406(3); R.R. 125a.

4

reside in the City. The Managing Director shall establish such City residency within twelve (12) months of being appointed.

\*\*\*

(d) In the event that the position of Managing Director cannot be filled by the Mayor, the Mayor may appoint a Temporary Managing Director for a period of time not to exceed ninety (90) days. During this period of time, the Mayor shall continue to use all available means to fill the position.

(e) In the event that Mayor has not filled the position of Managing Director within one hundred eighty (180) days of taking office, City Council shall, within ninety (90) days thereafter, hire a Managing Director. Any person hired by City Council shall hold the qualifications for said position prescribed by this Charter. The Mayor shall not have the power of veto over any candidate hired by City Council in accordance with the provisions of this Charter.

CHARTER §401(a), (d) and (e); R.R. 123a-124a. In short, the Charter Board held that because the Charter authorized the appointment of a Temporary Managing Director, it was improper for Mayor Spencer to have performed those duties himself.

The Charter Board also cited Section 301 of the Charter, which establishes the office of Mayor, and Section 401 of the Charter, which establishes the office of Managing Director. The Charter Board reasoned that because the Charter establishes two separate offices, they must be occupied by two different persons. *See also* Section 311 of the Charter (the Mayor "shall appoint a full-time officer of the City who shall have the title of Managing Director…."); R.R. 123a.

Finally, the Charter Board considered the Administrative Code of the City of Reading. Section 1-141 of the Administrative Code authorizes the Managing Director to issue employee "memoranda" or to reassign an employee to

5

another position. Likewise, Section 1-181 of the Administrative Code makes the Managing Director the administrator of the department of finance. The Charter does not authorize the Mayor to reassign employees or to transfer funds. The Charter Board concluded that Mayor Spencer violated these provisions by taking these actions in the name of the Managing Director.

Based on the above findings, the Charter Board imposed a public censure on Mayor Spencer; an administrative fine of $1,000 to defray the cost of the investigation; and a $4,000 fine for violating the above provisions of the Charter and the Administrative Code. The $4,000 fine was based on the number of violations, the seriousness of the violations, and the willful and intentional conduct of the Mayor.

Mayor Spencer appealed to the trial court, arguing that the Charter Board erred in finding that he violated the Charter and Administrative Code and in failing to consider the Mayor's defense that he justifiably relied on the Charter Board's Advisory Opinion No. 22 when he performed the duties of Managing Director.[3] The trial court agreed, holding that the Charter Board capriciously

---

[3] Article VI of the City of Reading Charter Board Ordinance, which is Appendix A of the Charter, provides as follows:

> Upon written request of any public official or city employee, or without such request should a majority of the Board deem it in the public interest, the Board may render advisory opinions concerning matters of home rule or enforcement of the City Charter. All advisory opinions shall be issued in writing and may include any redactions necessary to prevent disclosure of the identity of the person who is a subject of the opinion.

> An advisory opinion may be used as a defense in any subsequent investigation or prosecution, provided that the official or employee who sought the opinion did so in good faith and only to the extent material facts were not misrepresented in the request for the opinion.

**(Footnote continued on the next page . . .)**

disregarded the defense provided by Advisory Opinion No. 22.  The trial court held that

> Advisory Opinion No. 22 makes clear the Charter is being interpreted by the Board to mean the appointment of a Temporary Managing Director is permissive, but can only occur after the first 90 days if there is not a filling of that vacancy.

Trial Court opinion at 5.  In this case, Geffken resigned on March 15, 2012.  According to the terms of Advisory Opinion No. 22, the Mayor could not appoint a Temporary Managing Director before June 15, 2012.  All of the actions found by the Charter Board to have violated the Charter and the Administrative Code occurred during this initial 90-day period.[4]  Therefore, the trial court refused "to adhere to the notion that [the Mayor] violated the Charter when the actions he undertook were in direct reliance upon a clear Advisory Opinion approved by the Charter Board." Trial Court opinion at 6.  Accordingly, the trial court reversed and vacated the final opinion and order of the Charter Board.  The Charter Board now appeals.

On appeal, the Charter Board argues that: (1) the trial court did not apply the proper standard of review; (2) the trial court erred by substituting its own judgment for the Board's and relying upon an incorrect interpretation of Advisory Opinion No. 22; (3) the Board's adjudication was supported by substantial evidence; (4) the trial court erred in considering matters outside the record; and (5)

---

**(continued . . .)**

CHARTER, APPENDIX A;  R.R. 176a.  The Charter Board agrees that an advisory opinion may be used as a defense.

[4] The Charter Board does not challenge this conclusion.

the trial court erred in concluding that the Board could not assess a fine against Mayor Spencer.

Mayor Spencer has filed a motion to quash the instant appeal, arguing that the Charter Board, an adjudicatory tribunal, lacks standing to appeal a reversal of its adjudication.

**Motion to Quash Appeal**

We begin with the motion to quash. Mayor Spencer argues that the Charter Board lacks standing to appeal for two reasons. First, as an adjudicatory tribunal, the Charter Board could not be aggrieved by the trial court's order reversing its adjudication, any more than a court of law can be aggrieved by an appellate court reversal of its decision. Second, any standing conferred upon the Charter Board by reason of its prosecutorial function is destroyed because this appeal is being pursued by the adjudicative side of the Board, which, in turn, improperly commingles the Board's prosecutorial and adjudicative functions. We consider these two standing arguments *seriatim*.

In support of his first standing argument, Mayor Spencer cites to *Appeal of Board of Adjustment, Lansdowne Borough*, 170 A. 867 (Pa. 1934). In *Lansdowne*, the board of adjustment denied an application for a special exception. The landowners appealed to the trial court, and it reversed the decision of the board of adjustment. The board of adjustment appealed the trial court's order. The Pennsylvania Supreme Court held that the board of adjustment was an adjudicatory tribunal, not an agency, and, thus, could not be aggrieved by the trial court's order. Accordingly, it lacked standing to appeal.

The Charter Board counters that *Lansdowne* is not applicable because the Charter Board has been assigned functions that give it a stake in the outcome of

8

its decisions. The Charter Board claims to have been modeled after the State Ethics Commission, which was created to administer, prosecute, enforce, and adjudicate cases under the Public Official and Employee Ethics Act, 65 Pa. C.S. §§1101-1113. Specifically, pursuant to the Charter Board Ordinance, the Charter Board has the power and duty to "[h]ear and decide all complaints alleging violations of the Charter and Administrative Code." CHARTER BOARD ORDINANCE §III.A.(1); R.R. 163a. Further, the Charter Board may impose penalties, initiate preliminary investigations, issue subpoenas, adopt rules and regulations, issue advisory opinions, enforce and interpret the City's Home Rule Charter and "have all other powers necessary" to effectuate the Charter. CHARTER BOARD ORDINANCE §§II and III.A.(1)-(7); R.R. 160a-163a. As such, the Charter Board's interest in appeals from its decisions is direct and substantial.

The basic principle of standing is that a person is not adversely affected or aggrieved by a judicial determination unless he has a direct and substantial interest in the matter. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975). In the context of an agency, "when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters." *Pennsylvania Game Commission v. Department of Environmental Resources*, 555 A.2d 812, 815 (Pa. 1989). Here, the Charter Board argues that its interest is direct and substantial because the trial court's ruling directly conflicts with its ability to enforce and interpret the Charter. If the Charter Board is unable to appeal a reversal, its authority as guardian of the Charter is compromised.

We agree with the Charter Board that its functions are different from those of a zoning board, *i.e.*, the tribunal held to have lacked standing in

*Lansdowne*. The Charter was adopted pursuant to the Home Rule Charter and Optional Plans Law, 53 Pa. C.S. §2941. A home rule charter has the force and status of an enactment of the legislature. *In re Addison*, 122 A.2d 272 (Pa. 1956). Where an agency has been given "certain functions, duties and responsibilities" it is deemed to have been "conferred" an interest, absent statutory language to the contrary. *Pennsylvania Game Commission*, 555 A.2d at 815. Through direct democracy, the citizens of the City enacted the Charter Board's enabling legislation, *i.e.*, Amendment I of the Charter. The Charter confers upon the Charter Board the power and duty to enforce and interpret the Charter, adopt necessary rules and regulations, and conduct investigations. The Charter does not limit the Charter Board's function to that of adjudicating disputes. Thus, the Charter Board has a direct and substantial interest in this appeal.[5]

---

[5] In his brief to this Court, Mayor Spencer argues that the Charter Board lacks authority to hear any cases and, thus, lacked jurisdiction to adjudicate this case. The Mayor admits that he did not raise this issue to the trial court, but argues it is not waived because it involves subject matter jurisdiction.

The Charter Board counters that Amendment I, Section 2(b) of the Charter gives it jurisdiction to

> hear and decide all cases alleging violations of the Charter or Administrative Code, except that its jurisdiction shall not extend to any case arising under the Ethics Code or the Personnel Code. Insofar as permitted by state law the Board shall issue binding opinions, impose penalties and administrative fines, refer cases for prosecution, and conduct investigations on its own initiative and on referral or complaint. City Council shall appropriate sufficient funds to enable the Board to perform the duties assigned to it, including expenses for independent counsel and other necessary staff.

CHARTER, AMENDMENT I, §2(b); R.R. 107a-08a. Accordingly, the Charter Board argues that it has authority to hear this case and if the Mayor wanted to challenge this authority he needed to raise that issue before the trial court. We agree.

A home rule charter has the force and status of an enactment of the legislature. *In re Addison*, 122 A.2d 272 (Pa. 1956). As such, it is presumed constitutional and the burden of proving otherwise rests on the party alleging unconstitutionality. *Cali v. City of Philadelphia*,

**(Footnote continued on the next page . . .)**

In his second standing argument, Mayor Spencer cites our Supreme Court's seminal decision in *Lyness v. State Board of Medicine*, 605 A.2d 1204 (Pa. 1992), which held that the right to a fair and impartial tribunal prohibits the commingling of prosecutorial and adjudicatory functions. Mayor Spencer argues that the appeal to this Court is being prosecuted by the Charter Board's solicitor, who advised the Charter Board in the instant adjudication. The solicitor appeared at the evidentiary hearing, giving advice to the Charter Board outside the presence of counsel for both parties. Mayor Spencer contends that the Charter Board's appeal violates *Lyness* because it impermissibly commingles adjudicatory and prosecutorial functions of the Charter Board.

In *Lyness*, the agency in question was a professional licensing board whose members determined there was sufficient evidence to initiate a disciplinary action against a physician and, then, later adjudicated the merits of the action brought against the physician. The *Lyness* court was concerned with the licensee's right to a fair and impartial tribunal, and its focus was on the hearing before the administrative agency. Here, Mayor Spencer does not claim that the Charter

---

**(continued . . .)**
177 A.2d 824 (Pa. 1962). Constitutional challenges do not need to be raised at the administrative agency level, as agencies do not decide constitutional questions. *See* 2 Pa. C.S. §753. However, constitutional challenges must be made to the first court to hear the appeal. *Lehman v. Pennsylvania State Police*, 839 A.2d 265, 276 (Pa. 2003).

Although Mayor Spencer attempts to categorize this issue as one of subject matter jurisdiction in order to avoid waiver, it is really a challenge to the constitutionality of the Charter provision giving the Board the authority to decide, *inter alia,* the complaint against Mayor Spencer. The Mayor needed to challenge the constitutionality of the Charter before the trial court. Because he failed to do so, it is waived. *Newcomer v. Civil Service Commission of Fairchance Borough*, 515 A.2d 108, 110 (Pa. Cmwlth. 1986) (constitutional challenge not raised before the trial court is waived on appeal to this Court).

Board's prosecutorial and adjudicatory functions were not properly separated during the investigation and hearing phase of the proceeding. *Lyness* is inapposite.

Accordingly, we deny Mayor Spencer's motion to quash the appeal.

**Charter Board Appeal**

The Charter Board's first issue on appeal is whether the trial court applied the proper standard of review. The Charter Board argues that the trial court recited the correct standard of review under Section 754(b) of the Local Agency Law,[6] but then erred by concluding that the Charter Board capriciously disregarded the evidence. The Charter Board contends that the latter occurs where "the fact-finder deliberately ignores relevant, competent evidence." *Capasso v. Workers' Compensation Appeal Board (RACS Associates, Inc.)*, 851 A.2d 997, 1002 (Pa. Cmwlth. 2004), and that did not occur in this case. We disagree.

The Charter Board's finding that Mayor Spencer violated the Charter by taking on "the power, mantel [sic] and authority of the Managing Director," Charter Board Final Opinion and Order at 27, hinged on the Charter Board's determination that "[t]he Mayor had an option, which he did not exercise" to "appoint a Temporary Managing Director" pursuant to the Charter. *Id.* at 28. The trial court found that the Mayor properly relied upon the Charter Board's Advisory

___

[6] Section 754(b) states that where a complete record was developed before the local agency and the trial court does not take additional evidence,

> the [trial] court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with the law, or that the provisions of [local agency practice and procedure have been violated], or *that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence*.

2 Pa. C.S. §754(b) (emphasis added).

12

Opinion No. 22, which stated, explicitly, that the Mayor could not exercise this appointment power until 90 days had passed following the first day of vacancy in the Managing Director position. There is no dispute that an advisory opinion is a valid "defense" to prosecutions brought by the Charter Board. CHARTER BOARD ORDINANCE ARTICLE VI, APPENDIX A OF THE CHARTER. We agree with the trial court that the Charter Board capriciously disregarded the Advisory Opinion by simply stating in a footnote that it was irrelevant, with no analysis.

In its second issue, the Charter Board argues that the trial court erred by substituting its own judgment for that of the Board in rejecting the Charter Board's interpretation of its own Advisory Opinion No. 22.[7] Advisory Board Opinion No. 22 states, in relevant part, as follows:

> The time limitations and appointment powers of Section 401(a) and 401(d) [of the Charter] must be read in *pari materia*. Importantly, the clear language of Section 401(d) does not empower the Mayor to appoint a Temporary Managing Director until the Mayor cannot fill the position of Managing Director under Section 401(a) and Section 401(a) provides that during the first 90 days of taking office the Mayor "shall appoint a Managing Director." Section 401(a) is silent regarding an appointment of a Temporary Managing Director during the first 90 days of a Mayor's term.

> Therefore, without any hesitation, the Charter clearly provides that the appointment of the Temporary Managing Director shall not exceed 90 days. Charter § 401(d). The time line mandated by the Charter is strict. Within 90 days of taking office the Mayor shall appoint a Managing Director. Charter § 401(a).

---

[7] The Charter Board argues that the trial court could not rely upon the Advisory Opinion at all because it is not law. However, neither the trial court nor the Mayor has suggested that the Advisory Opinion has the force of law or that the Charter Board is bound by it. In any event, the Charter Board itself concedes that the Mayor could invoke an Advisory Opinion as a defense pursuant to Charter Board Ordinance Article VI, Appendix A of the Charter.

> After that first 90 day period, if the Mayor is unsuccessful in making that appointment, the Mayor may then appoint a Temporary Managing Director "for a period of time not to exceed ninety (90) days." Charter § 401(d). In the event that the position of Managing Director is not filled by the Mayor within 180 days, City Council must hire a Managing Director within 90 days thereafter. Charter § 401(e). Thus, the Charter mandates a maximum period of time of 270 days until a Managing Director must be hired or a vacancy in the position of Managing Director must be filled under Section 403 [which provides that Section 401 applies when a vacancy occurs].

Advisory Opinion No. 22 at 4, *available at* http://www.readingpa.gov/sites/default/files/boards/charter_board/advisory_opinions/Adv_Op_22_Signed.pdf.

The Charter Board asserts that the trial court misconstrued this sentence in the second paragraph of the Advisory Opinion: "After that first 90 day period, if the Mayor is unsuccessful in making that appointment, the Mayor may then appoint a Temporary Managing Director." The Charter Board contends that, when read in context, the purpose of this sentence is to establish the maximum term of service for a Temporary Managing Director. It does not mean, as the trial court reasoned, that the Mayor may not appoint a Managing Director in the first 90 days following a vacancy.

The Advisory Opinion was issued to address the maximum period of time a Temporary Managing Director may serve and how such an appointment impacts City Council's ability to fill the position. In addressing these issues, the Charter Board examined Section 401 of the Charter and identified three 90-day periods. In the initial 90-day period, the Mayor has the power to appoint a Managing Director with the approval of City Council. In the second 90-day period, the Mayor has the power to appoint a Temporary Managing Director

14

without the need for City Council approval. In the final 90-day period, City Council will hire the Managing Director without the need for the Mayor's approval. It is irrelevant whether the Charter Board's analysis of Section 401 in the Advisory Opinion was correct. Mayor Spencer reasonably relied on the Advisory Opinion, and the trial court's interpretation of the Advisory Opinion to support Mayor Spencer's position was also reasonable. Thus, the trial court did not err in holding that the Advisory Opinion provided a valid defense to the charges against Mayor Spencer.

In its third issue, the Charter Board argues that its adjudication was supported by substantial evidence. It found that the Charter created the offices of Mayor and Managing Director to be separate positions. Therefore, Mayor Spencer violated numerous sections of the Charter and the Administrative Code by performing the duties of both positions. We disagree.

To begin, none of the provisions cited by the Charter Board specifically prohibit the Mayor from performing both jobs during a vacancy in the Managing Director position. They are general provisions setting forth the respective duties of a Mayor and a Managing Director. The Charter Board's argument is premised on its conclusion that Mayor Spencer had the authority to appoint a Temporary Managing Director during the first 90 days of the vacancy and its argument that his reliance on Advisory Opinion No. 22 was misplaced. As noted above, these claims lack merit.[8] It also bears noting that no member of City

---

[8] In its brief, the Charter Board asserts that the Mayor did not possess the "qualifications" to be the Temporary Managing Director. This was not raised as a specific allegation of error. Section 401(b) of the Charter requires the Managing Director to have a college degree in public or business administration and several years of executive or administrative experience. However, this requirement is specifically set forth in the Charter for "candidates" for the office of

**(Footnote continued on the next page . . .)**

15

Council objected to Mayor Spencer performing both positions during the period of time he was doing so.

In its final issue, the Charter Board contends that the trial court erred in considering matters outside the record. During the hearing, the trial court observed that it was inappropriate to expend City funds on this litigation because no harm was alleged to have occurred. Further, given that the Managing Director serves at the Mayor's pleasure and reports to the Mayor, the trial court perceived no reason why Mayor Spencer could not temporarily perform the duties of Managing Director himself. The trial court opined that the Charter Board was politically motivated in filing its complaint against the Mayor and imposing sanctions. Mayor Spencer points out that this was the second time the Charter Board had come before the trial court attempting to sanction him. In both cases the complaints were filed by a City Council member who was a political opponent of Mayor Spencer.

In its appeal to this Court, the Charter Board does not cite any authority for reversing the trial court's order based upon the above-referenced comments. The Charter Board also did not object to the trial court's statements at the hearing or request recusal. In any event, the trial court did not decide the matter based on its comments, which were *obiter dicta*. The trial court decided the case on the facts and law presented. Thus, no error has been established.[9]

---

**(continued . . .)**
Managing Director and the "hiring of a replacement" by City Council. CHARTER §§401(b) and (e), 402; R.R.124a. The Charter is silent regarding whether a Temporary Managing Director appointed by the Mayor is also subject to these qualifications. CHARTER §401(d); R.R. 124a.

[9] The Charter Board's fifth claim is that the monetary amounts of the fines imposed were within the guidelines of the Charter. Because we agree with the trial court that Mayor Spencer established a proper defense to his actions, we need not address this issue.

## Conclusion

For all of the foregoing reasons, Mayor Spencer's motion to quash is denied and the order of the trial court is affirmed.

_____
MARY HANNAH LEAVITT, Judge

Judge Leadbetter did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Honorable Vaughn D. Spencer,  :
Mayor of the City of Reading       :
                                   :
            v.                     :    No. 1865 C.D. 2013
                                   :
City of Reading Charter Board,     :
                  Appellant        :

## **O R D E R**

AND NOW, this 8th day of August, 2014, the Motion to Quash filed by The Honorable Vaughn D. Spencer is DENIED and the order of the Court of Common Pleas of Berks County, dated September 17, 2013, is AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge