COMMONWEALTH of Pennsylvania,
OFFICE OF ATTORNEY GENERAL,
By Thomas W. Corbett, Jr., Attorney
General, Petitioner

v.

EAST BRUNSWICK TOWNSHIP, and
East Brunswick Township Board
of Supervisors, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 9, 2008.

Decided Sept. 23, 2008.

Susan L. Bucknum, Sr. Deputy Attorney General and Susan J. Forney, Chief Deputy Attorney General, Harrisburg, for petitioner.

Thomas A. Linzey, Chambersburg, for respondents.

Daniel E. Brannen, Jr., Santa Fe, NM, for amici curiae.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Before this Court in our original jurisdiction is a Petition for Review in the Nature of a Complaint for Declaratory Judgment and Injunctive Relief filed by the Pennsylvania Attorney General to invalidate the East Brunswick Township Sewage Sludge Ordinance (Ordinance).[1] The Attorney General contends, *inter alia*, that the Solid Waste Management Act[2] (SWMA) and the act commonly referred to as the Nutrient Management Act[3] establish uniform statewide standards for the regulation of the application of sewage sludge and animal manure and other such nutrients to land, which precludes the Ordinance's inconsistent regulation of these activities. Chapter Three of the Agriculture Code, commonly known as "Act 38," prohibits the enactment of "unauthorized local ordinances" that interfere with normal agricultural operations, and the Attorney General believes that the Ordinance is such a prohibited ordinance. 3 Pa.C.S. § 313(a).[4]

---

1. East Brunswick Township, Schuylkill County, Pa. Ordinance No.1 (2006).

2. Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

3. 3 Pa.C.S. §§ 501–522.

4. It states that:

 A local government unit shall not adopt nor enforce an unauthorized local ordinance.

The background is as follows. On December 6, 2006, the Township enacted the Ordinance to regulate the application of sewage sludge to land within the Township. The Ordinance prohibits any corporation from using sewage sludge to fertilize its land and imposes criminal sanctions upon corporations that do so in violation of the Ordinance. On the other hand, the Ordinance allows individuals to apply sewage sludge to land but only by obtaining a permit from the Township and in other ways complying with the terms of the Ordinance.

Jeff Hill owns and operates J.C. Hill Tree Farms, Inc. (Hill Farms), a 1000–acre tree farm located in the Township's agricultural district. Hill Farms applies sewage sludge to its tree farm in accordance with a nutrient management plan approved by the Schuylkill County Conservation District and a permit issued by the Pennsylvania Department of Environmental Protection (DEP). Because the Ordinance prevents Hill Farms, a corporation, from carrying out its approved plan or from using its DEP permit, Hill requested the Attorney General to review the Ordinance and determine whether it was "unauthorized" within the meaning of Act 38.[5]

The Attorney General conducted the requested review and concluded that the Ordinance was an "unauthorized local ordinance" for several reasons. First, he concluded that East Brunswick Township, a creature of statute, simply lacked the authority under either the Municipalities Planning Code or the Second Class Township Code to regulate sewage sludge in the way it purports to do. Second, he concluded that the Township lacked the authority to strip a corporation of rights that have been expressly conferred upon it by statute and by its charter. Third, he concluded that because the substantive terms of the Ordinance conflicted with and were disruptive to environmental protection statutes that were intended to occupy the entire field of regulation in the area of the use and application of sewage and animal manure as land fertilizer, the Ordinance was preempted.

The Attorney General acted upon these legal conclusions by filing the instant petition for review seeking to have the Ordinance declared an "unauthorized local ordinance" under Act 38 and its enforcement enjoined. Because the Attorney General believed the Ordinance was "on [its] face and as a matter of law" invalid, the Attorney General simultaneously filed an Application for Summary Relief pursuant to PA. R.A.P. 1532(b).[6] By this application, the Attorney General seeks a final judgment that the Ordinance, in its entirety, be declared an "unauthorized local ordinance" and enjoined from enforcement.[7]

---

3 Pa.C.S. § 313(a). Act 38 is also known as the Agricultural, Communities and Rural Environmental Act, or ACRE Act.

5. Section 314(a) of Act 38 provides that:
An owner or operator of a normal agricultural operation may request the Attorney General to review a local ordinance believed to be an unauthorized local ordinance and to consider whether to bring legal action under section 315(a) (relating to right of action).
3 Pa.C.S. § 314(a).

6. PA. R.A.P. 1532(b) authorizes this Court, on application, to "enter judgment if the right of the applicant thereto is clear" at any time after the filing of a petition for review.

7. Specifically, the Attorney General alleges that the Ordinance is unauthorized, prohibited or preempted under the following statutes: (1) Act 38 in Count I; (2) SWMA in Count II; (3) the Nutrient Management Act in Count III; (4) the act commonly referred to as the Business Corporation Law (BCL), Chapter 15 of the Associations Code, 15 Pa.C.S. §§ 1501–1512, in Count IV; (5) the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202, in Count V, which was with-

In response, East Brunswick Township and the East Brunswick Township Board (collectively, Township) have filed preliminary objections.[8] The Township seeks dismissal of the petition for review, asserting, *inter alia*, that Act 38 is unconstitutional; that the Attorney General lacks standing to bring this action; and that, in any case, Act 38 expressly saves the Ordinance from being found "unauthorized." The Township also claims that the Attorney General's pleading should have been styled as a "complaint" not a "petition for review" and, thus, the procedural device of summary relief is not available to the Attorney General. In opposing the Attorney General's application for summary relief,[9] the Township raises many of the same legal arguments offered in support of its preliminary objections.

For the reasons set forth below, we reject the Township's request for outright dismissal of the Attorney General's petition for review. Because at this early stage in the case it cannot be determined that the Attorney General's right to a final judgment is clear as a matter of law, we deny his application for summary relief.

## ACT 38

Act 38, Chapter Three of the Agriculture Code, "deals with local regulation of normal agricultural operations." 3 Pa.C.S. § 311. It prohibits municipalities from adopting an "unauthorized local ordinance," which is an ordinance that does any of the following:

(1) Prohibits or limits a normal agricultural operation unless the local government unit:

(i) has expressed or implied authority under State law to adopt the ordinance; and

(ii) is not prohibited or preempted under State law from adopting the ordinance.

(2) Restricts or limits the ownership structure of a normal agricultural operation.

3 Pa.C.S. § 312. This prohibition may be enforced by an order of the Commonwealth Court, upon initiation of an action by the Attorney General or by any person aggrieved by the Ordinance. 3 Pa.C.S. § 315(a) and (b).[10]

drawn by the Attorney General; (6) the Agricultural Area Security Law, Act of June 30, 1981, P.L. 128, *as amended*, 3 P.S. §§ 901–915, in Count VI; and (7) The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101–68701, in Count VII.

8. The Township filed ten preliminary objections in which it asserts that: (1) because the Ordinance is exempt from Act 38, this Court is divested of subject matter jurisdiction over the entire petition for review; (2) the Attorney General lacks standing to bring his claims; (3) there is no case or controversy; (4) the petition for review fails to state a cause of action; (5) paragraph 18 of the pleading lacks specificity; and (6) the Attorney General's action should be reclassified as a complaint rather than a petition for review.

9. In its opposition to the Attorney General's Application for Summary Relief, the Town-

ship contends: (1) Act 38 is unconstitutional because it violates a community's right to local self-government; (2) this Court lacks subject matter jurisdiction; (3) the Attorney General's action is not properly styled as a petition for review; and (4) the application for summary relief should be denied because the Attorney General's right to relief is not clear.

10. Section 315 states:

(a) Attorney General action.—The Attorney General may bring an action against the local government unit in Commonwealth Court to invalidate the unauthorized local ordinance or enjoin the enforcement of the unauthorized local ordinance

(b) Other party action.—Notwithstanding any provision of 42 Pa.C.S. Ch. 85 Subch. C (relating to actions against local parties), any person who is aggrieved by the enact-

To specify what constitutes a "normal agricultural operation," Section 312 [11] incorporates by reference a provision of the Right–to–Farm Act that defines the term as follows:

Normal agricultural operation. The activities, practices, equipment and procedures that farmers adopt, use or engage in the production and preparation for market of poultry, livestock and their products and in the production, harvesting and preparation for market or use of agricultural, agronomic, horticultural, silvicultural and aquacultural crops and commodities and is:

(1) not less than ten contiguous acres in area; or

(2) less than ten contiguous acres in area but has an anticipated yearly gross income of at least $10,000.

The term includes new activities, practices, equipment and procedures consistent with technological development within the agricultural industry. Use of equipment shall include machinery designed and used for agricultural operations, including, but not limited to, crop dryers, feed grinders, saw mills, hammer mills, refrigeration equipment, bins and related equipment used to store or prepare crops for marketing and those items of agricultural equipment and machinery defined by the act of December 12, 1994 (P.L. 944, No.134), known as the Farm Safety and Occupational Health Act. Custom work shall be considered a normal farming practice.

Section 2 of the Act of June 10, 1982, P.L. 454, *as amended,* 3 P.S. § 952. The purpose of the Right–to–Farm Act is to protect agricultural operations "from nuisance suits and [certain] ordinances." 3 Pa.C.S. § 312.

Act 38 directs the Attorney General to review a local ordinance upon request of any owner or operator of a normal agricultural operation who believes that the ordinance is "unauthorized." 3 Pa.C.S. § 314(a). [12] The Attorney General must respond to that request within 120 days and inform the requesting party whether he will "bring a legal action" against the ordinance in question. 3 Pa.C.S. § 314(c). [13] Annually, the Attorney General must make reports to the General Assembly about the number of local ordinance reviews and Section 315(a) actions his office conducts each year. 3 Pa.C.S. § 318. [14] In discharging these responsibili-

ment or enforcement of an unauthorized local ordinance may bring an action against the local government unit in Commonwealth Court to invalidate the unauthorized local ordinance or enjoin the enforcement of the unauthorized local ordinance.
3 Pa.C.S. § 315.

11. It states:
"Normal agricultural operation." As defined under section 2 of the act of June 10, 1982 (P.L. 454, No. 133), entitled "An act protecting agricultural operations from nuisance suits and ordinances under certain circumstances."
3 Pa.C.S. § 312.

12. It states:
(a) Request for review.—An owner or operator of a normal agricultural operation may request the Attorney General to review a local ordinance believed to be an unauthorized local ordinance and to consider whether to bring legal action under section 315(a) (relating to right of action).
3 Pa.C.S. § 314(a).

13. It states:
(c) Response.—Within 120 days after receiving a request under subsection (a), the Attorney General shall advise the person that made the request whether or not the Attorney General will bring legal action under section 315(a). If the request under subsection (a) is in writing, the response shall be in writing.
3 Pa.C.S. § 314(c).

14. It states:
The Attorney General shall provide to the chairman and the minority chairman of the

ties, the Attorney General is not without assistance because the legislature has provided as follows:

> The secretary and the dean of the College of Agricultural Sciences at The Pennsylvania State University shall, upon request of the Attorney General, provide expert consultation regarding the nature of normal agricultural operations in this Commonwealth.

3 Pa.C.S. § 314(d).

In effect, Act 38 charges the Attorney General with the responsibility to enforce a policy expressed in Section 3(a) of the Right–to–Farm Act, *i.e.*, that normal agricultural operations be "encouraged" and not impeded by local ordinances. 3 P.S. § 953(a).[15] The Township contends that Act 38 is disgraceful legislation that resulted from a six-year effort of "agribusiness and sewage sludge-hauling industries to

---

> Senate Committee on Agricultural and Rural Affairs and the chairman and minority chairman of the Agricultural and Rural Affairs Committee of the House of Representatives an annual report to include the following:
> (1) Information on how many reviews were requested, the nature of the complaints and the location of the ordinances cited.
> (2) Information on how many reviews were conducted.
> (3) Information on how many legal actions were brought by the Attorney General.
> (4) Information on the outcome of legal actions brought by the Attorney General.
> 3 Pa.C.S. § 318.

**15.** Section 3(a) of the Right–to–Farm Act states:
> Limitation on local ordinances.
> (a) Every municipality shall encourage the continuity, development and viability of agricultural operations within its jurisdiction. Every municipality that defines or prohibits a public nuisance shall exclude from the definition of such nuisance any agricultural operation conducted in accordance with normal agricultural operations so long as the agricultural operation does not have a direct adverse effect on the public health and safety.

eliminate lawmaking authority exercised by rural municipal governments." Township Brief in Opposition to Application for Summary Relief (Township Brief) at 26. In addition to arguing that Act 38 effects bad public policy, the Township contends that Act 38 is unconstitutional. Finally, the Township argues that it is exempt from the terms of Act 38. We consider the Township's Act 38 issues *seriatim*.

### 1. Constitutionality of Act 38.

◼ The Township argues that Act 38 violates the United States and Pennsylvania Constitutions by infringing on the Township's right to protect the health, welfare and safety of its citizens against the hazards presented by land application of sewage sludge.[16] In support, the Township directs the Court to such varied sources as the Declaration of Independence;[17] the first Pennsylvania Constitu-

---

3 P.S. § 953(a).

**16.** Specifically, the Township argues that because "land application of sewage sludge ... poses a significant threat to health, safety, and welfare," it "decided to ban land application of sludge by corporations and to regulate land application by persons using the same regulations promulgated at the state level." Township Brief at 46–47. The Township does not explain how it protects the health, safety, and welfare of its citizens to permit land application of sewage sludge by individuals, but not by corporations. Nor does it explain how duplicating applicable State regulations protects the health, safety, and welfare of its citizens, particularly, again, when State regulations permit corporations to apply sewage sludge to land.

**17.** The Township cites to paragraph 2 of the Declaration of Independence, which states in pertinent part:
> We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.—That to secure these rights, Governments are in-

tion of 1776; and Sections 2 and 25 of the Pennsylvania Constitution's Declaration of Rights. The Township maintains that

> people are the source of all power, and communities possess an inalienable right to govern ... [which] cannot be delegated, limited, or made subservient to any other power. The power of local self-government is exempt from, and hence superior to, the general government of the state.

Township Brief at 44–45. The Township inveighs against the efforts of "men of property and the judiciary" to relegate local government to a position "inferior to that of the General Assembly." Township Brief at 51.[18]

■ There are several reasons why the Township's argument must be rejected. First and foremost, we are not prepared to reject one of the most basic precepts of governmental structure in this Commonwealth, i.e., that "local governments are creatures of the legislature from which they get their existence." ROBERT E. WOODSIDE, Pennsylvania Constitutional Law 507 (1985). The subordinate role of municipalities within Pennsylvania's system of governance has been explained by

the Pennsylvania Supreme Court as follows:

> [I]t is fundamental that municipal corporations are creatures of the State and that the authority of the Legislature over their powers is supreme. Municipal corporations have no inherent powers and may do only those things which the Legislature has expressly or by necessary implication placed within their power to do.

*Denbow v. Borough of Leetsdale*, 556 Pa. 567, 576, 729 A.2d 1113, 1118 (1999) (citations and quotation omitted). Indeed, under our constitution, local government begins with enabling legislation enacted by the General Assembly. Article IX, Section 1 states:

> The General Assembly shall provide by general law for local government within the Commonwealth. Such general law shall be uniform as to all classes of local government regarding procedural matters.

PA. CONST. ART. IX, § 1.[19]

Notwithstanding this well-settled authority, the Township invokes the Declaration of Rights found in Article 1 of the

stituted among Men, deriving their just powers from the consent of the governed,— That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness.

DECLARATION OF INDEPENDENCE, para. 2 (U.S. 1776). In accordance with these above-recited principles, the people have adopted the Pennsylvania Constitution, which is the governing and foundational authority for self-rule in the Commonwealth. The Declaration of Independence does not authorize municipalities to enact legislation in defiance of the Pennsylvania Constitution and statutes enacted thereunder.

18. The Township also suggests that the definition of "unauthorized local ordinance" is unconstitutionally vague, but it has not developed this argument. We decline to address it further.

19. The General Assembly has provided for local government. *See, e.g.*, The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§ 55101–58502; The Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. §§ 3101–6302; The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101–68701. These schemes create different types of municipal corporations; establish their form and government; and grant them powers necessary to carry out their statutory responsibilities.

Pennsylvania Constitution to support its claim that Act 38 unconstitutionally intrudes upon a township's ability to legislate. Specifically, the Township invokes Article 1, Section 2, which declares that citizens have the "inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper," and Article 1, Section 25, which states that each right declared in Article 1 is "excepted out of the general powers of government and shall forever remain inviolate." PA. CONST. art. 1, §§ 2, 25. The Township contends that Article 1, Section 2 establishes an "inalienable right of self-government" at the local level and that Article 1, Section 25 means that "people are not bound to follow the procedures of the general government for altering government at the local level." Township Brief at 38, 43–45, 47–50, 54. The Township reads Section 2 and 25 together to mean that local government is superior to the State. Id.

 The Township's argument stems from a flawed premise. Article 1 of the Pennsylvania Constitution sets forth a Declaration of the Rights of individual citizens, not the rights of municipal corporations. It protects individuals "against infringement by government." Woodside, Pennsylvania Constitutional Law 113.

Specifically, the "inviolate" rights referenced in Section 25 are those "fundamental rights [of citizens] that cannot be encroached on by the state government." KEN GORMLEY, ET AL., THE PENNSYLVANIA CONSTITUTION: A TREATISE ON RIGHTS AND LIBERTIES §§ 27.1; 27.2. (2004). A township is not a citizen. Article 1, Section 25 does not recognize or protect the rights of

local governments from encroachment by state government.

 Section 2 guarantees citizens the right to amend the Pennsylvania Constitution.[20] As treatise authority explains,

Constitutional amendment is the legal process ... by which the people may exercise their "inalienable and indefeasible right to alter ... their government [pursuant to Section 2]."

GORMLEY, §§ 35.1; 5.1–5.3. Article 1, Section 2 is silent on how local government is changed. Accordingly, it does not authorize citizens to amend their form of local government without following the statutory procedures therefor. See, e.g., the Act of April 21, 1949, P.L. 665, as amended, 53 P.S. §§ 13101–13157 (relating to the adoption and amendment of city charters); 53 Pa.C.S. §§ 2901–2983 (the Home Rule Charter and Optional Plans Law).

Act 38 is presumed to be constitutional and will not be set aside unless it "clearly, palpably and plainly violates the Constitution." Commonwealth v. Means, 565 Pa. 309, 315, 773 A.2d 143, 147 (2001). The Township has failed to overcome that presumption. Its reliance upon the Declaration of Rights in the Pennsylvania Constitution is misplaced. Ironically, Article 1 could be more properly invoked by Jeff Hill, whose right to operate his farm in the corporate form has been encroached upon by the Township. In short, the General Assembly acted constitutionally when it restricted municipalities from adopting "unauthorized local ordinances" that interfere with normal agricultural operations.

---

**20.** Article 1, Section 2 more fully states:
All power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness. For the advancement of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper.
PA. CONST. art.1, § 2.

## 2. Ordinance Exemption from Act 38.

██ The Township asserts that Section 313(c) of Act 38 expressly authorized the adoption of the Ordinance, thereby depriving this Court of jurisdiction to hear the Attorney General's claims. The Township's argument has nothing to do with this Court's subject matter jurisdiction. It is more in the nature of a demurrer that is based upon its proffered construction of Section 313(c) of Act 38.

Section 313(c) provides, in relevant part, as follows:

> (c) Construction.—Notwithstanding the provisions of this section, *nothing in this chapter shall be construed to diminish, expand or otherwise affect* the legislative or regulatory authority of local government units under State law, including the following:
>
> (1) Chapter 5 (relating to nutrient management and odor management).
>
> (2) The regulation, control or permitting procedures for the land application of class A or B biosolids.

3 Pa.C.S. § 313(c) (emphasis added). In parsing Section 313(c), the Township concedes that the words "diminish" and "expand" clarify that Act 38 does not alter municipal authority in any way. However, it argues that "otherwise affect" means something other than "expand" or "diminish," which compels the conclusion that the legislature meant the phrase to exempt ordinances that regulate the land application of sewage from being found an "unauthorized local ordinance" under Act 38.

Words and phrases of a statute must be construed according to their common and approved usage. 1 Pa.C.S. § 1903(a).[21] The commonly accepted meaning of the term "affect" is quite different from the meaning of "exempt." "Exempt" means "to free from a duty or obligation," whereas the term "affect" means to "bring about a change . . . [and is] most commonly used in the sense 'to influence.'" WEBSTER's II NEW COLLEGIATE DICTIONARY 392, 18 (1995). "Otherwise affect" fills whatever gap is left by the words "expand" and "diminish;" it may refer, for example, to the procedures by which ordinances are adopted. Thus, applying the most common and approved usage, as we are required to do, we conclude that the legislature's use of the phrase "or otherwise affect" means that the authority of local governments to legislate under State law was not expanded, diminished or otherwise *changed* by Act 38.

The Township argues that if "or otherwise affect" is not given the effect of exempting nutrient and odor management and sewage sludge regulation from Act 38's coverage, then Section 313(c) is redundant of the definition of unauthorized local ordinance under Section 312. We disagree. Section 312 defines what constitutes an unauthorized local ordinance under Act 38.[22] Section 313(c) is a com-

---

**21.** Section 1903(a) the Statutory Construction Act of 1972 provides in relevant part:

> Words and phrases shall be construed according to rules of grammar and according to their common and approved usage.
>
> 1 Pa.C.S. § 1903(a).

**22.** An "unauthorized local ordinance" is defined as

> [a]n ordinance enacted or enforced by a local government unit which does any of the following:

> (1) Prohibits or limits a normal agricultural operation unless the local government unit:
> (i) has expressed or implied authority under State law to adopt the ordinance; and
> (ii) is not prohibited or preempted under State law from adopting the ordinance.
> (2) Restricts or limits the ownership structure of a normal agricultural operation.
>
> 3 Pa.C.S. § 312.

plementary provision that explains the obverse, *i.e.,* what is *not* an "unauthorized local ordinance."

Specifically, Section 313 confirms that municipalities retain their authority to regulate, whatever that may be, as otherwise provided by law. For example, the Nutrient Management Act preempts local ordinances or regulations that conflict with it or its accompanying regulations, but it allows ordinances that are "consistent with and no more stringent than [its] requirements." 3 Pa.C.S. § 519(d).[23] Section 313 of Act 38 clarifies that a municipality's ability to enact an ordinance in accordance with the terms of the Nutrient Management Act is unaffected by Act 38. Such an ordinance would not be an "unauthorized local ordinance" within the meaning of Act 38.

Had the General Assembly intended to exclude certain subjects from the scope of Act 38, it would have used a word close to the meaning of exclude or exempt, rather than the word "affect," which connotes change. More likely, "otherwise affect" was used as a catchall phrase used to explain that Act 38 does not expand, con-

tract or in any other way alter the existing rights of municipalities to legislate, whether those rights are procedural or substantive.

Section 313 of Act 38 does not exempt the Ordinance from its prohibitory terms. Accordingly, this Court rejects the Township's claim that the Ordinance is exempt from being found an "unauthorized local ordinance" under Act 38.

### 3. Standing

The Township next contends that the Attorney General lacks standing to challenge the Ordinance under Act 38. It argues that the Attorney General is acting as attorney for Hill Farms, which should engage the services of a private attorney to do battle on its behalf. Further, because the Ordinance has not been enforced against the allegedly aggrieved party, Hill Farms, the Township contends that there is lacking (1) an aggrieved party in this case with an immediate, substantial or direct interest at stake and (2) a "case" or "controversy" for this Court to resolve.

---

**23.** Section 519 of the Nutrient Management Act provides:

(a) General.—*This chapter and its provisions are of Statewide concern and occupy the whole field of regulation regarding nutrient management and odor management, to the exclusion of all local regulations.*

(b) Nutrient management.—No ordinance or regulation of any political subdivision or home rule municipality may prohibit or in any way regulate practices related to the storage, handling or land application of animal manure or nutrients or to the construction, location or operation of facilities used for storage of animal manure or nutrients or practices otherwise regulated by this chapter if the municipal ordinance or regulation is in conflict with this chapter and the regulations or guidelines promulgated under it.

(c) Odor management.—No ordinance or regulation of a political subdivision or

home rule municipality may regulate the management of odors generated from animal housing or manure management facilities regulated by this chapter if the municipal ordinance or regulation is in conflict with this chapter and the regulations or guidelines promulgated under it.

(d) Stricter requirements.—*Nothing in this chapter shall prevent a political subdivision or home rule municipality from adopting and enforcing ordinances or regulations which are consistent with and no more stringent than the requirements of this chapter and the regulations or guidelines promulgated under this chapter.* No penalty shall be assessed under any such local ordinance or regulation under this subsection for any violation for which a penalty has been assessed under this chapter.

3 Pa.C.S. § 519 (emphasis added).

▮▮▮ The concept of "standing," is concerned with the question of *who* is entitled to make a legal challenge to the matter involved. *Pennsylvania Game Commission v. Department of Environmental Resources,* 521 Pa. 121, 127, 555 A.2d 812, 815 (1989). Generally, the party bringing this challenge is one whose interest has been adversely affected, but it also includes the government agency or officer designated by statute to initiate litigation.

> The terms "substantial interest," "aggrieved" and "adversely affected" are the general, usual guides in that regard, but they are not the only ones. For example, when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters.

*Id.* at 128, 555 A.2d at 815. In the present case, the General Assembly has directed the Attorney General to

> ... bring an action against the local government unit in Commonwealth Court to invalidate the unauthorized local ordinance *or* enjoin the enforcement of the unauthorized local ordinance.

3 Pa.C.S. § 315(a) (emphasis added). Because the Attorney General has a statutory duty to take action, his "interest" has been "legislatively conferred." Pennsylvania Game Commission, 521 Pa. at 128, 555 A.2d at 815.[24]

Further, there is a "case" or "controversy" presented. Act 38 prohibits *"the enforcement of local ordinances existing on the effective date of this section and to the enactment or enforcement of local ordinances enacted on or after the effective date of this section."* 3 Pa.C.S. § 313(b) (emphasis added). The Ordinance was enacted in 2006, after the effective date of Act 38. Accordingly, the Attorney Generals Act 38 action was expressly authorized under Section 313(b). Stated otherwise, Act 38 has established that an injury-in-fact exists by the mere presence of an ordinance on the books that purports to interfere with normal agricultural operations, regardless of whether it has been enforced.

Finally, the Township mistakenly describes the Attorney General's action as undertaken on behalf of Hill Farms. The Attorney General is the "chief law officer of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law." PA. CONST. art. 4, § 4.1. His responsibility under Act 38 is an example of a duty "imposed by law." To take action against ordinances that interfere with the General Assembly's policy goal to promote farming is consistent with his "duty ... to uphold and defend the

---

24. Where individuals present a claim against the government in the federal courts, the plaintiff seeking this review must have suffered an injury. *Lujan v. Defenders of Wildlife, et al.,* 504 U.S. 555, 578, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The analysis is different in our state courts. As our Pennsylvania Supreme Court has explained, if a "statute properly enacted by the Pennsylvania legislature furnishes the authority for a party to proceed in Pennsylvania's courts, the fact that the party lacks standing under traditional notions of our jurisprudence will not be deemed a bar to an exercise of this Court's jurisdiction, since the Pennsylvania legislature constitutionally may enhance or diminish the scope of this Court's jurisdiction." *Housing Authority of County of Chester v. Pennsylvania State Civil Service Commission,* 556 Pa. 621, 632, 730 A.2d 935, 941 (1999).

Here, the Attorney General's standing is legislatively conferred and beyond question. However, Act 38 also empowered individuals to bring an action to remove an unauthorized ordinance from the books regardless of whether it has been enforced against the individual plaintiff. Under the principle of County of Chester, the legislature was not barred from doing so by the Pennsylvania Constitution.

constitutionality of all statutes so as to prevent their suspension or abrogation. . . ." Section 204(a)(3) of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, 71 P.S. § 732–204(a)(3). When the Attorney General carries out his statutory duties, he acts on behalf of the entire public. The fact that Hill Farms is also authorized to initiate an action under Act 38 does not change the fundamental fact that the Attorney General's enforcement of Act 38 benefits the public interest.

Because Act 38 is not unconstitutional; does not exempt the Ordinance from its terms; and expressly authorizes the Attorney General to file the instant petition for review, we must overrule the Township's preliminary objections. Accordingly, we turn next to the Attorney General's application for summary relief.

## SUMMARY RELIEF

 The Attorney General's pleading is captioned "Petition for Review in the Nature of a Complaint for Declaratory Judgment and Injunctive Relief." The Township contends that the Attorney General's action should have been styled as a complaint. Because the procedural device of the application for summary relief is available only where a petition for review has been filed with this Court, the Township contends that the Attorney General's application for summary relief must be denied as improvidently filed. In addition, because summary relief is available only where the petitioner's right to relief is absolutely clear, the Township contends that an application for summary relief should be summarily denied where, as here, the Court is presented with a case of first impression.

The Township asserts that actions commenced under Act 38 should be presented to this Court as a complaint governed solely by the Pennsylvania Rules of Civil Procedure. Pennsylvania Rule of Appellate Procedure 1501(a)(3) authorizes "[o]riginal jurisdiction actions heretofore cognizable in an appellate court . . . [including a] declaratory judgment," but the Township believes this rule does not apply here. PA. R.A.P. 1501(a)(3). The Township appears to argue that because Act 38 did not exist when Rule 1501(a)(3) was adopted, it is not an action "heretofore cognizable."

First, the "action" referred to in PA. R.A.P. 1501(a)(3) is an action for declaratory and injunctive relief. This is what the Attorney General has filed. The legal theory for every such action will be different and will change as new statutes are enacted. In this case, the legal theory for the Attorney General's action is the Township's enactment of what is alleged to be an "unauthorized local ordinance," in violation of Act 38.

Second, a Chapter 15 (of the Pennsylvania Rules of Appellate Procedure) petition for review is the appropriate pleading where the petitioner seeks review of a governmental action, irrespective of whether the petition for review invokes this Court's original or appellate jurisdiction. The Note to Pennsylvania Rule of Appellate Procedure 1501 states, in relevant part, as follows:

> This chapter applies to review of any "determination" of a "government unit" . . . [which] means . . . any political subdivision or municipal or other local authority or any officer or agency of any such political subdivision or local authority.

PA. R.A.P. 1501, Note. *See also* G. RONALD DARLINGTON, ET AL., PENNSYLVANIA APPELLATE PRACTICE §§ 1501:7; 40:300 (2006 ed.) (explaining that "an original jurisdiction action commenced in the Commonwealth Court by the Commonwealth against 'any political subdivision or municipal or other

local authority' ... would also be commenced by an original jurisdiction petition for review.").

Act 38 authorizes the Attorney General to bring an original jurisdiction "action against [a] local government unit in Commonwealth Court to invalidate the unauthorized local ordinance or enjoin the enforcement of the unauthorized local ordinance." 3 Pa.C.S. § 315(a). The Attorney General has brought an action against a local government unit, the Township, to seek review of the Township's action in enacting an unauthorized ordinance. This falls squarely within a Chapter 15 petition for review. Accordingly, summary relief is a procedural device available in an Act 38 case.

Further, the availability of summary relief is not dependent on whether the case is one of first impression. Pennsylvania Rule of Appellate Procedure 1532(b) provides:

> Summary relief. At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear.

Pa. R.A.P. 1532(b). The rule does not state that summary relief is not available in a case of first impression. Nevertheless, the Township argues that precedent teaches that summary relief is unavailable

in cases of first impression that involve interpretation of a statute where the non-moving party advances a plausible interpretation, as this Court held in *Central Dauphin School District v. Commonwealth*, 143 Pa.Cmwlth. 374, 598 A.2d 1364, 1373 (1991). This principle is inapplicable here because we have already rejected the Township's interpretation of Act 38 as not plausible.

Summary relief under Rule 1532(b) is appropriate where the moving party establishes that the case is clear and free from doubt; that there exist no genuine issues of material fact to be tried; and that the moving party is entitled to judgment as a matter of law. *Department of the Auditor General v. State Employees' Retirement System*, 860 A.2d 206, 210 (Pa.Cmwlth. 2004). Although the right to relief must be clear, this does not mean that every case of first impression will be beyond the reach of summary relief.

## UNAUTHORIZED LOCAL ORDINANCE UNDER ACT 38.

The Attorney General contends that the Ordinance is illegal on its face because it strips corporations of rights secured by the U.S. and Pennsylvania Constitutions [25] and duplicates, improperly, the State's regulation of land application of sewage sludge.[26] The Township counters that the

25. Section 7.5 of the Ordinance states:

Within the Township of East Brunswick, *corporations engaged in the land application of sludge, dredged material, or any other type of waste as defined* under Title 25, § 271.1 of the Pennsylvania Code, *shall not be "persons"* under the United States or Pennsylvania Constitutions, *or under the laws* of the United States, *Pennsylvania*, or East Brunswick Township, and so shall not have the rights of persons under those constitutions and laws. In addition, within the Township of East Brunswick, *no corporation engaged in the land application of sludge, dredged*

material, or any other type of waste as defined under Title 25, § 271.1 of the Pennsylvania Code, *shall be afforded the protections of the Contracts Clause or Commerce Clause of the United States Constitution*, or similar provisions from the *Pennsylvania Constitution*.

Ordinance, § 7.5 (emphasis added).

26. Section 8 of the Ordinance requires any "person" to apply for and receive the approval of the Township "before" sewage sludge is applied in East Brunswick Township. Ordinance, § 8. In connection therewith, the "per-

land application of sewage sludge by a corporation is not a "normal agricultural operation" as defined by Act 38 and, thus, any limitations imposed by the Ordinance are irrelevant. A "normal agricultural operation" is one conducted by "human beings," according to the Township. Noting that there is no mention of sewage sludge in Act 38 or in the Right–to–Farm Act, the Township claims the land application of sewage sludge is disposal of industrial and municipal waste, not a "normal agricultural operation." Accordingly, the Township asserts that the Ordinance cannot be an "unauthorized local ordinance."

## I. Normal Agricultural Operation

The threshold issue in any Act 38 case is what constitutes a "normal agricultural operation." As noted, the term generally includes the following:

> The activities, practices, equipment and procedures that farmers adopt, use or engage in the production and preparation for market of poultry, livestock and their products and in the production, harvesting and preparation for market or use of agricultural, agronomic, horticultural, silvicultural and aquacultural crops and commodities.... The term includes new activities, practices, equipment and procedures consistent with technological development within the agricultural industry.

Section 2 of the Right–to–Farm Act, 3 P.S. § 952. Neither the Right–to–Farm Act nor Act 38 specifies what are normal "activities, practices, equipment and procedures," and neither statute mentions the

application of sewage sludge to land, as pointed out by the Township.

However, the Attorney General contends that Section 103 of the SWMA provides this specification. Section 103 of the SWMA defines "normal farming operations" as follows:

> *The customary and generally accepted activities, practices and procedures that farms adopt, use, or engage in* year after year in the production and preparation for market of poultry, livestock, and their products; and in the production, harvesting and preparation for market of agricultural, agronomic, horticultural, silvicultural and aquacultural crops and commodities; provided that such operations are conducted in compliance with applicable laws, and provided that the use or disposal of these materials will not pollute the air, water, or other natural resources of the Commonwealth. *It* includes the storage and utilization of agricultural and food process wastes, screenings and sludges for animal feed, and *includes the agricultural utilization of septic tank cleanings and sewage sludges which are generated off-site. It includes* the management, collection, storage, transportation, *use or disposal of manure, other agricultural waste and food processing waste, screenings and sludges on land where such materials will improve the condition of the soil,* the growth of crops, or in the restoration of the land for the same purposes.

35 P.S. § 6018.103 (emphasis added). The DEP's regulation also defines "normal farming operations" to include using waste to improve soil. 25 Pa.Code § 271.1.[27]

---

son" must pay prescribed fees to the Township for the collection and testing of biosolid samples. Section 9 prescribes testing requirements of sewage sludge that will be done upon receipt of a "complete application." ORDINANCE, § 9.

**27.** It defines a "normal farming operation" as:

> *The customary and generally accepted activities, practices and procedures that farms adopt,* use or engage in year after year in the production and preparation for market

Further, in *Hempfield Township v. Hapchuk*, 153 Pa.Cmwlth. 173, 620 A.2d 668 (1993), this Court observed that "sewage sludge use is farming and agricultural in nature" in the context of whether the application of sewage sludge is a form of agricultural use protected as a pre-existing historical use or a change or expansion of a historical use. *Id.* at 672. Thus, the Attorney General argues that as a matter of law the application of biosolids to land is a "normal agricultural operation."

We agree that the terms "agricultural" and "farming" are interchangeable, as established in Hempfield Township. More problematic is whether the legislature intended that "normal agricultural operation" be a legal determination based upon the SWMA or upon a regulation, as opposed to a factual determination based upon evidence.

First, the legislature did not expressly incorporate by reference Section 103 of the SWMA into Act 38, as it did expressly incorporate Section 2 of the Right–to–Farm Act. Indeed, Section 103 provides that its definitions are to be followed "when used in this act," *i.e.*, the SWMA; it does not expand its definitions for use in other statutes, such as Act 38. Further, the regulation upon which the Attorney General relies was not adopted by the Department of Agriculture under authority of the Right–to–Farm Act. Rather, it

was adopted by DEP under the SWMA, a statute not intended to promote agriculture but to regulate "solid waste practices." Section 102 of the SWMA, 35 P.S. § 6018.102.

Second, Act 38 directs the Attorney General to seek expert opinions from the Secretary and Dean of the College of Agricultural Sciences at Penn State to determine what constitutes a "normal agricultural operation." 3 Pa.C.S. § 314(d). This suggests, at a minimum, that the determination of what constitutes a "normal agricultural operation" is an evidentiary, not a legal, determination.[28] Here, the Township vehemently challenges the finding that the application of sewage sludge to land is either "normal" or even "agricultural." It argues "corporate ... sewage sludge hauling" is an industrial and municipal activity. Township Brief in Support of Preliminary Objections at 10–11.

Third, as noted by the Township, nowhere in Act 38 is there any mention of sewage sludge or its application to land. Similarly, Section 2 of the Right–to–Farm Act, which has been incorporated into Act 38, says nothing about sewage sludge. Because the Attorney General has filed for summary relief, there is no evidentiary record, not even an affidavit, on which to make the factual finding that "sewage sludge application" is a "normal agricultur-

of poultry, livestock and their products; and in the production, harvesting and preparation for market of agricultural, agronomic, horticultural, silvicultural and aquicultural crops and commodities; *if the operations are conducted in compliance with applicable laws,* and if the use or disposal of these materials will not pollute the air, water or other natural resources of this Commonwealth. *The term includes* the storage and utilization of agricultural and food process wastes for animal feed, and *the agricultural utilization of septic tank cleanings and sewage sludges which are*

*generated offsite. The term also includes* the management, collection, storage, transportation, *use or disposal of manure, other agricultural waste and food processing waste on land where the materials will improve the condition of the soil,* the growth of crops or in the restoration of the land for the same purposes.

25 Pa.Code § 271.1 (emphasis added).

**28.** That is not to say that every determination will require an expert opinion, only that it may require evidence.

al operation" and not "industrial waste disposal," as asserted by the Township.

Summary relief is available only in the clearest of cases, and it is not clear to the Court that judgment can be entered in favor of the Attorney General at this juncture. The threshold question, *i.e.*, whether the application of sewage sludge to land is a "normal agricultural operation" under the protection of Act 38, is not clear as a matter of law, as asserted by the Attorney General. In the absence of any evidence we must, therefore, deny summary relief.

## CONCLUSION

For the above-stated reasons, the Court overrules the Township's preliminary objections [29] and denies the Attorney General's request for summary relief.

Judge COHN JUBELIRER did not participate in the decision in this case.

---

29. The Township's preliminary objection that paragraph 18 of the petition for review lacks specificity is overruled. Paragraph 18 states:
 The Ordinance restricts the ownership structure of a normal farming operation in violation of 3 Pa.C.S. § 313.

## *ORDER*

AND NOW, this 23rd day of September, 2008, the Application for Summary Relief filed in this Court's original jurisdiction by the Commonwealth of Pennsylvania, Office of Attorney General by Thomas W. Corbett, Jr., is hereby DENIED. The Preliminary Objections filed by East Brunswick Township and the East Brunswick Township Board of Supervisors are OVERRULED and the Respondents are directed to file an answer in thirty (30) days.

This allegation does not lack specificity and, in any case, states a conclusion of law.