# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Philadelphia Independent Towers and Salvors Association, and K&A Auto Salvage, Inc., and Steffa Metals Co., Inc., and Derkas Auto Body, Inc., and Morton Towing & Recovery, and Norton's Tow Squad, Inc., | : : : : : : : |
| Petitioners | : : |
| v. | : No. 455 M.D. 2012 : |
| Commonwealth of Pennsylvania, Pennsylvania State Police and Frank Noonan, in his capacity as Commissioner of the Pennsylvania State Police and Philadelphia Parking Authority and Vincent Fenerty, in his capacity as Executive Director of the Philadelphia Parking Authority, | : Argued: June 15, 2015 : : : : : : : : : |
| Respondents | : : |

BEFORE: HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER** **FILED: August 26, 2015**

Before this Court in our original jurisdiction are cross-applications for summary relief. Petitioners are private companies who provide towing, storage

and salvaging services in the City of Philadelphia (Philadelphia) and the trade association representing their interests.[1] Respondents are the Pennsylvania State Police (PSP), the Philadelphia Parking Authority (Authority), and their respective chief officers.[2] Petitioners seek an order declaring the Intergovernmental Agreement for Vehicle and Load Uprighting, Towage, and Storage (Interagency Agreement) between the PSP and Authority invalid and enjoining the PSP from using the Authority to perform certain towing services.[3]

## 1. The Interagency Agreement

The PSP assumed the role of patrolling certain highways within Philadelphia in January 2007. (Whereas Clause, Interagency Agreement at 1.[4]) On March 30, 2007, the PSP and Authority entered into the Interagency Agreement whereby the agencies agreed to detailed procedures for removing and storing vehicles

---

[1] Petitioners are: (1) Philadelphia Independent Towers and Salvors Association; (2) K&A Auto Salvage, Inc.; (3) Steffa Metals Co., Inc.; (4) Derkas Auto Body, Inc.; (5) Morton Towing & Recovery; and (6) Norton's Tow Squad, Inc.

[2] Respondent Frank Noonan is the Commissioner of the PSP and Respondent Vincent Fenerty is the Executive Director of the Authority.

[3] Petitioners originally filed a Petition for Review with this Court on July 13, 2012, seeking relief pursuant to the Declaratory Judgments Act, 42 Pa. C.S. §§ 7531-7541. After the PSP's preliminary objections were overruled and answers to the Petition for Review were filed, this matter remained dormant for two years. On November 14, 2014, we issued an Order requiring Petitioners to file a status report, which Petitioners filed on December 15, 2014. Therein, Petitioners advised that an application for summary relief would be filed within 30 days. On January 13, 2015, Petitioners filed an Application for Summary Relief. On May 5, 2015, the PSP and the Authority filed a Petition for Summary Relief and Summary Judgment and an Application for Summary Relief, respectively.

[4] The Interagency Agreement is attached to Petitioners' Petition for Review as Exhibit A.

encountered by the PSP as part of their newly assumed enforcement duties. (Whereas Clause, Interagency Agreement at 1.) The PSP entered into the Interagency Agreement because of its

> desire to have the Authority, as a government agency created by both the Commonwealth and [Philadelphia] and as an agency with great experience and success in providing such services in Philadelphia, continue to provide such vehicle or combination load towing, storage, uprighting, removal, and recovery services as directed by the State Police as set forth herein[.]

(Whereas Clause, Interagency Agreement at 1.)

Pursuant to Section 1 of the Interagency Agreement, which sets forth general matters, the "Authority shall be the Commonwealth's sole towing, impoundment, auction, and Recovery Duty Agent in the City of Philadelphia." (Interagency Agreement at § 1.) Section 2 of the Interagency Agreement addresses "Live Stop Impoundments."[5] (Interagency Agreement at § 2.) At the time of the Interagency Agreement, the Authority was already serving as the exclusive provider of, *inter alia*, towing and storage services for the PSP in connection with the Live Stop Program. See Section 5505(d)(22) of what is commonly called the Parking Authority Law, 53 Pa. C.S. § 5505(d)(22) (the Authority is empowered to serve as

---

[5] Philadelphia's "Live Stop" Program "involves the immediate towing and impoundment of vehicles found to be operating in violation of certain state motor vehicle statutes." Philadelphia Parking Authority v. American Federation of State, County, and Municipal Employees, District Council 33, Local 1637, 845 A.2d 245, 246 (Pa. Cmwlth. 2004). See Section 6309 of the Vehicle Code, 75 Pa. C.S. § 6309 (governing impoundment for nonpayment of fines and vehicles with a gross weight of 17,001 pounds or more); Section 6309.1 of the Vehicle Code, 75 Pa. C.S. § 6309.1 (governing impoundment for nonpayment of fines and vehicles with a gross weight of 17,001 pounds or more in cities of the first class); and Section 6309.2 of the Vehicle Code, 75 Pa. C.S. § 6309.2 (governing immobilization, towing and storage of vehicles for driving without operating privileges or registration).

the exclusive towing and storage agent for the enforcement of the Live Stop Program).[6] Section 2 of the Interagency Agreement formalized the previous arrangement, and Petitioners raise no objections to Section 2 of the Interagency Agreement.

Section 3 of the Interagency Agreement governs "investigatory tows." According to the Interagency Agreement, the Authority is required to tow vehicles, when directed by the PSP, from highways to PSP property when the PSP is conducting an investigation related to the vehicle. (Interagency Agreement at § 3.) If the vehicle is not reclaimed by the owner after the investigation is completed, the PSP "may direct the Authority to tow the vehicle to an Authority facility and initiate the appropriate process of disposing of the vehicle as abandoned. . . ." (Interagency Agreement at § 3.)

Section 4 of the Interagency Agreement governs "safety tows" and provides that the Authority shall "tow and store any vehicle designated by the [PSP] as a safety hazard and/or abandoned vehicle" found on a highway. (Interagency Agreement at § 4.) Although the Authority is the default tower of vehicles seized by the PSP under Section 4 of the Interagency Agreement, the owner of the vehicle is given the right to direct that the vehicle be towed by a private company, so long as the owner is present at the scene, the vehicle weighs less than 17,000 pounds,

---

[6] The Parking Authority Law is set forth in Chapter 55 of the General Local Government Code, 53 Pa. C.S. §§ 5501–5517, which governs parking authorities. The Parking Authority Law was originally enacted as the Act of June 5, 1947, P.L. 458, formerly, 53 P.S. §§ 341–356, and it was repealed as part of its codification by the Act of June 19, 2001, P.L. 287.

and the private company can respond within a reasonable timeframe.  (Interagency Agreement, Exhibit "A," Towing Procedures, ¶ 3.)

## 2. Cross-Applications for Summary Relief

Petitioners challenge Sections 3 and 4 of the Interagency Agreement as being unlawful.  Petitioners allege that they would compete for towing and storage jobs deriving from the PSP's enforcement activities within Philadelphia if the Authority had not been given the exclusive authority to tow vehicles abandoned or seized on the highways under the Interagency Agreement.  (Petitioners' Application for Summary Relief ¶ 33.)  According to Petitioners, they are entitled to summary relief because Sections 3 and 4 of the Interagency Agreement are unlawful to the extent that these provisions require the Authority to perform activities that compete with private towing and storage companies in a manner not authorized by the General Assembly in the Parking Authority Law.[7]  Petitioners

---

[7] Petitioners also assert broadly that the PSP is conducting activities in violation of its enabling act.  Petitioners do not specifically state which activities outlined in the Interagency Agreement violate the PSP's enabling act.  Relevant to this case, Section 3352(c) of the Vehicle Code provides:

> Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway under any of the following circumstances:
>
> > (1) Report has been made that the vehicle has been stolen or taken without the consent of its owner.
> > (2) The person or persons in charge of the vehicle are physically unable to provide for the custody or removal of the vehicle.
> > (3) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay.

*(Continued…)*

5

assert that, in order for government agencies to compete with private companies, the agencies must be authorized to do so in their enabling legislation, and nothing in the Parking Authority Law enables the Authority to compete with private towing and storage companies. Petitioners also contend that, by entering into the Interagency Agreement, the PSP has exercised legislative power in violation of Article II, Section 1 of the Pennsylvania Constitution, Pa. Const. art. II, § 1 ("The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."). (Petitioners' Application for Summary Relief ¶ 31.)

Petitioners further argue that they are entitled to summary relief and the Interagency Agreement must be rendered void because it directs the Authority to perform "garage services" prohibited under Section 5505(b)(4) of the Parking Authority Law. Section 5505(b)(4) provides:

> (b) Purposes.**--**The authority shall exist for the following purposes:
>
> ….

---

(4) The vehicle is in violation of section 3353 (relating to prohibitions in specified places) except for overtime parking.
(5) The vehicle has been abandoned as defined in this title. The officer shall comply with the provisions of Chapter 73 (relating to abandoned vehicles and cargos).

75 Pa. C.S. § 3352(c). The PSP is also authorized to "remove or cause to be removed to a place of safety any unattended vehicle illegally left standing upon any highway, bridge, causeway or in any tunnel, in such position or under such circumstances as to interfere unduly with the normal movement of traffic or constitute a safety hazard." Section 3352(b) of the Vehicle Code, 75 Pa. C.S. § 3352(b).

(4) Plan, design, locate, acquire, hold, construct, improve, maintain and operate, own, lease as lessor or lessee land and facilities devoted to the parking of vehicles. The authority shall not have the power to engage in the sale of gasoline, the sale of automobile accessories, automobile repair and service or *any other garage service* and shall not engage in the sale of any commodity of trade or commerce.

53 Pa. C.S. § 5505(b)(4) (emphasis added).

Respondents contend in their Applications for Summary Relief[8] that the activities outlined in the Interagency Agreement are all authorized by the Parking Authority Law or the Vehicle Code. According to Respondents, the General Assembly created the Authority to combat traffic congestion and it may tow and impound vehicles to achieve that purpose. The Interagency Agreement advances this purpose by setting up a process for enforcing on-street parking regulations on Philadelphia's highways. Respondents argue that vehicles left on the shoulder of the highway are blocking traffic, impeding the smooth flow of traffic, and also note that leaving a vehicle on the highway violates Section 3353 of the Vehicle Code, 75 Pa. C.S. § 3353 (relating to prohibitions in specified places), and local ordinances, which the Authority is statutorily authorized to enforce. For these reasons, Respondents assert that the Authority is authorized by the Parking Authority Law and the Vehicle Code to perform the services set forth in the Interagency Agreement; therefore, Respondents are entitled to summary relief. Additionally, Respondents contend that we should grant them summary relief because Petitioners' interpretation of the term "garage services," as used in Section

---

[8] The PSP and Authority filed separate Applications for Summary Relief. Because these two filings are essentially identical, we will be referring to both Applications as the "Applications for Summary Relief."

5505(b)(4) of the Parking Authority Law, is not supported by the Rules of Statutory Construction, which support Respondents' contrary interpretation of that term.

### 3. Discussion

Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure addresses applications for summary relief filed with this Court, and provides that: "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b). We will grant an application for summary relief only where "the moving party establishes that the case is clear and free from doubt; that there exists no genuine issues of material fact to be tried; and that the moving party is entitled to judgment as a matter of law." Office of Attorney General ex rel. Corbett v. East Brunswick Township, 956 A.2d 1100, 1113 (Pa. Cmwlth. 2008). Neither party has argued that there is a genuine issue of material fact at issue in this case, nor have we found one. We, therefore, turn to whether any of the parties are entitled to judgment as a matter of law.

### a. Competition with Private Enterprise

We first address Petitioners' argument that they are entitled to summary relief because Sections 3 and 4 of the Interagency Agreement impermissibly require the Authority to compete with private businesses by allowing the Authority to tow and store vehicles beyond the "Live Stop" Program. Petitioners cite Dominion Products and Services, Inc. v. Pittsburgh Water and Sewer Authority, 44 A.3d 697 (Pa. Cmwlth. 2011), to support their argument that a government agency

8

may not compete with private industry unless it is authorized to do so by its enabling act. Petitioners contend that, like the agreement at issue in Dominion, the Interagency Agreement unlawfully authorizes a government agency to compete with private enterprises.

Respondents argue that they are entitled to summary relief because Section 5505(d) of the Parking Authority Law, 53 Pa. C.S. § 5505(d), and Section 6109(g) of the Vehicle Code, 75 Pa. C.S. § 6109(g), empower the Authority to tow vehicles that pose safety risks or are illegally parked on highways. (PSP's Petition for Summary Relief and Summary Judgment ¶¶ 12-15; Authority's Application for Summary Relief ¶¶ 12-15.) They further contend that Petitioners' reliance on Dominion to support the contention that the Authority may not compete with private enterprise is misplaced because such competition is not prohibited by the Parking Authority Law.

In Dominion, private companies that specialized in repairing broken water and sewer lines in Pittsburgh challenged an agreement between Pittsburgh Water and Sewer Authority (PWSA) and a private repair company, Utility Line Security, LLC (ULS). Dominion, 44 A.3d at 700. Under Pennsylvania law, property owners are responsible for maintaining water and sewer lines, but repairing the lines in a prompt manner is often cost prohibitive for many property owners. Id. Private companies in Pittsburgh sought to make repair services more affordable by providing warranty programs that property owners could purchase for a monthly fee. Id. The agreement at issue in Dominion provided that all PWSA customers would be automatically enrolled into a warranty program run by ULS in exchange

9

for a $5 monthly fee collected by PWSA. Id. at 701. Although all of PWSA's customers were automatically enrolled in the program, those customers that did not want the protection, or wanted to purchase protection from another provider, could opt-out of the program. Id.

The petitioners in Dominion argued that the opt-out warranty program was a program operated by PWSA, a municipal authority. Id. at 703. Because municipal authorities can only perform activities authorized by their enabling act or the Constitution, the petitioners argued that the legality of the agreement had to be determined based on Section 5607 of the Municipality Authorities Act, 53 Pa. C.S. § 5607. Id. Section 5607(a) authorizes the creation of municipal water and sewer authorities. 53 Pa. C.S. § 5607(a). Municipal authorities created under Section 5607(a) "may exercise all powers necessary or convenient for the carrying out of [their] purposes." 53 Pa. C.S. § 5607(d). However, the Municipality Authorities Act limits the powers of public water and sewer authorities by providing:

> none of the powers granted by this chapter shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects or providing financing for insurance reserves *which in whole or in part shall duplicate or compete with existing enterprises* serving substantially the same purposes.

53 Pa. C.S. § 5607(b)(2)(emphasis added). In Dominion, we interpreted Section 5607(b)(2) as unambiguously limiting the power of PWSA in the interest of protecting "existing business enterprises from losing business to an enterprise created by a municipal authority." Dominion, 44 A.3d at 705. Accordingly, we held that the opt-out warranty program created by the agreement was not authorized by the Municipality Authorities Act. Id.

10

Dominion holds that Commonwealth agencies, like all creations of the state, only have those powers conferred upon them by their enabling legislation.  Id. at 703; see also City of Philadelphia v. Southeastern Pennsylvania Transportation Authority, 271 A.2d 504, 510 (Pa. Cmwlth. 1970) (quoting White Oak Borough Authority Appeal, 93 A.2d 437, 438 (Pa. 1953)) (stating "'[n]either authorities nor municipalities are sovereign; they have no original or inherent or fundamental powers of sovereignty or of legislation; they have only the power and authority granted them by enabling legislation'").  In Dominion, the legislative intent that the municipal authority was not to compete with private enterprise was unambiguously and expressly stated in the enabling legislation at issue, the Municipality Authorities Act.  However, there is no such express prohibition in the enabling legislation at issue here, the Parking Authority Law.

The Authority is a Commonwealth agency.  53 Pa. C.S. § 5505(a)(1) ("The authority shall constitute a public body corporate and politic, exercising public powers of the Commonwealth as an agency of the Commonwealth.").  As stated above, the Authority is endowed with only those powers the General Assembly has given to it pursuant to its enabling legislation.  Department of General Services v. Ogontz Area Neighbors Association, 483 A.2d 448, 452 (Pa. 1984).  Accordingly, through the use of statutory interpretation, we will determine whether the Authority has the power to perform certain activities.  Id.

11

The powers of the Authority are detailed in the Parking Authority Law.[9] According to the Parking Authority Law, parking authorities were created to alleviate a "parking crisis, which threatens the welfare of the community." Section

---

[9] In <u>City of Philadelphia v. Rendell</u>, 888 A.2d 922 (Pa. Cmwlth. 2005), we provided a brief history of the Parking Authority Law.

> The General Assembly enacted the Parking Authority Law in 1947 in response to the growing demand for off-street parking in the urban areas of the Commonwealth following World War II, a phenomenon viewed as a statewide problem impacting those residing inside and outside the affected cities. The Parking Authority Law enabled cities, boroughs, and first class townships to create parking authorities in order to provide, administer, and collect revenue from various types of parking facilities. Any parking authority created under this enabling act is not considered a municipal instrumentality but, instead, constitutes a "public body corporate and politic, exercising public powers of the Commonwealth as an agency thereof." 53 Pa. C.S. § 5505. Among the benefits flowing from a parking authority's designation as a state agency was the ability to finance construction projects free from the debt limits applicable to local governments and the right to engage in proprietary or business-type operations from which local governments might otherwise be precluded. . . .
> The [Authority] was created in 1950 by [a] City ordinance adopted pursuant to the Parking Authority Law. Initially, the Authority only operated off-street parking garages. These operations continue to the present, and are carried out through leases with the City.
> The Parking Authority Law was amended in 1982 to allow cities to delegate certain on-street parking functions to parking authorities. Some of these functions, such as issuing parking tickets and collecting money from parking meters, are revenue-producing. This revenue is required to be distributed back to the municipality as provided by ordinance or resolution. Consistent with this amendment to the Parking Authority Law, the City, in 1983, enacted an ordinance delegating to the Authority much of the City's on-street parking services, which previously had been handled by multiple departments of the City. The City and the Authority executed an "Agreement of Cooperation" under which the Authority administers the City's system of on-street parking. The net revenues collected by the Authority from on-street parking have been used by the City for its operations.

<u>Id.</u> at 925-26 (footnotes and case citations omitted).

12

5502(7) of the Parking Authority Law, 53 Pa. C.S. § 5502(7). The General Assembly declared that the crisis "can be reduced by administering and enforcing an efficient system of on-street regulations and by providing sufficient off-street parking and parking terminal facilities." Id. To meet the above mission, parking authorities may:

> (1) Conduct necessary research activity to maintain current data leading to efficient operation of off-street parking and parking terminal facilities for the fulfillment of public needs in relation to such parking.

> (2) Administer and enforce an efficient and coordinated system of on-street parking regulations where authorized by municipal ordinance or resolution.

> (3) Establish a permanent, coordinated system of parking and parking terminal facilities.

> (4) Plan, design, locate, acquire, hold, construct, improve, maintain and operate, own, lease as lessor or lessee land and facilities devoted to the parking of vehicles. . . .

53 Pa. C.S. § 5505(b). Parking authorities have "all the powers necessary or convenient for the carrying out of the purposes" of the Parking Authority Law. 53 Pa. C.S. § 5505(d). The one significant limitation imposed on activities of parking authorities included in the Parking Authority Law is a prohibition on selling gasoline or automobile accessories, or providing automobile repair or other garage services. 53 Pa. C.S. § 5505(b)(4). The Authority may lease a portion of its properties to outside automobile repair providers or other commercial entities so

long as the entities do not sell gasoline or automobile accessories. 53 Pa. C.S. § 5505(c).[10]

Notwithstanding any limitation in the Parking Authority Law, parking authorities may, if authorized by resolution or ordinance, "boot or tow a vehicle which is illegally parked or the owner of which is delinquent in [the] payment of previously issued parking tickets." 53 Pa. C.S. § 5505(d)(21)(iv). Additionally, the Authority has the power "to serve as the exclusive impounding agent or exclusive towing agent for the enforcement of impoundment orders pursuant to [the Live Stop Program] and to authorize towing and storage of vehicles and combinations by private towing agents for such purpose as necessary." 53 Pa. C.S. § 5505(d)(22).

In addition to the duties specifically enumerated in the Parking Authority Law, the Authority may "do all acts and things necessary to carry out the powers granted to the authority by . . . any other statute." 53 Pa. C.S. § 5505(d)(17)(iv). Section 3353(a)(2)(vii) of the Vehicle Code makes it illegal to stand or park a vehicle "[o]n a limited access highway unless authorized by official traffic-control devices," parking or standing is necessary to avoid conflict with other traffic, to protect the safety of persons or vehicles, or directed by a police officer. 75 Pa. C.S. § 3353(a)(2)(vii); see also Phila. Code § 12-913(1)(b)(vii) (providing identical language to Section 3353 of the Vehicle Code). Just prior to the filing of the

---

[10] Other prohibitions applicable to the Authority are detailed in Sections 5505(e) and 5508.1(p), which address the power of the Authority to impose certain contractual or financial obligations on the Commonwealth. 53 Pa. C.S. §§ 5505(e), 5508.1(p).

14

Petitioners' Petition for Review in this matter, the General Assembly amended the Vehicle Code on July 2, 2012 by adding Section 6109(g)(1), which grants the Authority the power to enforce all on-street parking regulations in Philadelphia. That provision, which took effect on October 1, 2012, states:

> Notwithstanding any contrary provision of 53 Pa. C.S. Ch. 55 or this title, beginning on March 31, 2014, the parking authority of a city of the first class shall enforce and administer the system of on-street parking regulation in a city of the first class on behalf of the city. The system of on-street parking regulation shall include all ordinances and resolutions enacted or adopted by the city of the first class pursuant to the powers specified under subsection (a)(1) and those certain stopping, standing and parking provisions provided in sections 3351 (relating to stopping, standing and parking outside business and residence districts), 3353 (relating to prohibitions in specified places) and 3354 (relating to additional parking regulations).

75 Pa. C.S. § 6109(g)(1).

After reviewing these provisions we conclude that, unlike the Municipality Authorities Act at issue in Dominion, the General Assembly did not intend for the Parking Authority Law to generally prohibit competition with private companies. The Parking Authority Law provides the Authority with broad powers related to the enforcement of on-street parking, including specific authorization of towing and storage activities that, by their very nature, compete with private towing companies who tow illegally parked vehicles. See Section 5505(d)(21) of the Parking Authority Law, 53 Pa. C.S. § 5505(d)(21) (providing that "notwithstanding anything to the contrary contained in this chapter, if authorized by resolution or ordinance of the legislative body of the parent municipality, to administer, supervise and enforce an efficient system of on-street parking regulation . . . includ[ing] the power . . . to boot or tow a vehicle which is illegally

15

parked").[11]  Unlike in the Municipality Authorities Act at issue in Dominion, nowhere in the Parking Authority Law did the General Assembly include a prohibition against the Authority competing with private entities with regard to the towing and storing of impounded vehicles.

We, therefore, agree with Respondents that the Authority is authorized by the Parking Authority Law and the Vehicle Code to tow vehicles parked on the highway.  Parking or standing on a highway is generally illegal, 75 Pa. C.S. § 3353, and the Authority is authorized to enforce parking laws and regulations by Section 5505(d)(21) of the Parking Authority Law, 53 Pa. C.S. § 5505(d)(21) (authorizing the Authority to "boot or tow a vehicle which is illegally parked"), and Section 6109(g)(1) of the Vehicle Code, 75 Pa. C.S. § 6109(g)(1) (authorizing the Authority "to enforce and administer the system of on-street parking regulation in a city of the first class on behalf of the city").  Because we find no provision or language in the Parking Authority Law or the Vehicle Code that can be interpreted to limit the Authority from competing with private towing and storage companies, we conclude that Respondents are entitled to judgment as a matter of law on this issue.

### b. "Garage Services"

We now turn to Petitioners' argument that they are entitled to summary relief because the activities outlined in Sections 3 and 4 of the Interagency

---

[11] A local resolution or ordinance is no longer required under Section 5505(d)(21) since the General Assembly directed the Authority, in Section 6109(g) of the Vehicle Code, to "enforce and administer the system of on-street parking regulation in [Philadelphia] on behalf of the city."  75 Pa. C.S. § 6109(g)(1).

Agreement are "garage services" that the Authority is prohibited from providing by Section 5505(b)(4) of the Parking Authority Law. Petitioners argue that towing and storage are garage activities within the meaning of Section 5505(b)(4).

Respondents disagree and argue that they are entitled to summary relief because Section 5505(b)(4) is "clearly intended to empower the Authority to secure property to provide off-street public parking, while prohibiting it from running an auto repair shop or gas station at such locations." (PSP's Petition for Summary Relief and Summary Judgment ¶ 22; Authority's Application for Summary Relief ¶ 22.) Similarly, Respondents contend that towing a vehicle cannot be considered garage services when viewed in light of the powers the General Assembly vested in the Authority. The Parking Authority Law, according to Respondents, provides the Authority with the power to tow vehicles illegally parked and in connection to the Live Stop Program. Interpreting "garage services" in a manner that excludes towing would be absurd and run contrary to the purposes of the Parking Authority Law.

The term "garage services" is not defined in the Parking Authority Law. As such, we apply the Rules of Statutory Construction to ascertain the intent of the General Assembly. Section 1921(a) of the Statutory Construction Act of 1972 (SCA), 1 Pa. C.S. § 1921(a). The Parking Authority Law's restriction on providing garage services reads as follows: "The authority shall not have the power to engage in the sale of gasoline, the sale of automobile accessories, automobile repair and service or *any other garage service* and shall not engage in the sale of

any commodity of trade or commerce." 53 Pa. C.S. § 5505(b)(4) (emphasis added).

We start our analysis of Section 5505(b)(4) by interpreting its words and phrases in accordance with the rules of grammar. Section 1903(a) of the SCA, 1 Pa. C.S. § 1903(a). To that end, "[g]eneral words shall be construed to take their meanings and be restricted by preceding particular words." Section 1903(b) of the SCA, 1 Pa. C.S. 1903(b); see also Steele v. Statesman Insurance Company, 607 A.2d 742, 743 (Pa. 1992) (internal quotation marks and citation omitted) (noting that under the "rule of *ejusdem generis* (of the same kind of class) . . . , where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to the persons or things of the same general kind or class as those specifically mentioned").

Because "garage services" is placed at the end of a list and preceded by the terms "any other," we are required to presume that the General Assembly defined garage services to include activities that are in the same class as automobile repair and service. While automobile towing and storage services may occur in conjunction with automobile repair and maintenance services, towing and storage are not the same activities as selling gasoline or automobile accessories. Even if towing and storage could be considered garage services, as the term is used in Section 5505(b)(4), we must interpret the Parking Authority Law, if possible, in a manner that gives effect to all its provisions, and presume that the General Assembly did "not intend a result that is absurd, impossible of execution or

18

unreasonable." Sections 1921(a) and 1922(1) of the SCA, 1 Pa. C.S. §§ 1921(a), 1922(1). Under Section 5505 of the Parking Authority Law, the Authority is specifically authorized to "boot or tow a vehicle which is illegally parked or the owner of which is delinquent in payment of previously issued parking tickets," and "to do all acts and things necessary . . . for the accomplishment of its purposes" of administering and enforcing on-street parking regulations. 53 Pa. C.S. §§ 5505(d)(21)(iv), 5505(d)(17)(i). It would be unreasonable to hold that the General Assembly intended to prohibit towing and storage as "garage services" in Section 5505(b) when it specifically authorizes such activities in Section 5505(d). Giving effect to all of the Parking Authority Law's provisions requires us to interpret the term "garage services" as excluding towing and storage activities specifically authorized by that statute.

Additionally, the General Assembly has directed the Authority to enforce and administer the on-street parking system in Philadelphia, "[n]otwithstanding any contrary provision of 53 Pa. C.S. Ch. 55" in its 2012 amendment to Section 6109 of the Vehicle Code. Under that provision, "enforce" is defined as follows:

> The issuance of parking violation notices or citations, the immobilization, *towing and impoundment of motor vehicles* and the collection of fines, penalties, costs and fees, including independent collection agency fees, for violations of any ordinance or resolution enacted in order to regulate or prohibit the stopping, standing or parking of motor vehicles in a city of the first class and those certain stopping, standing and parking provisions provided in this section and sections 3351, 3353 and 3354.

75 Pa. C.S. § 6109(g) (emphasis added). Our Supreme Court has defined statutory language containing the phrase "notwithstanding a contrary provision" as meaning:

"regardless of what any other law provides." City of Philadelphia v. Clement & Muller, Inc., 715 A.2d 397, 399 (Pa. 1998). Thus, even if "other garage services" could be interpreted to include towing and storage activities as identified in Sections 3 and 4 of the Interagency Agreement, the General Assembly has authorized the Authority to tow and store vehicles as part of its enforcement power. Because removing vehicles from the side of highways is a part of enforcing on-street parking regulations, we conclude that the General Assembly provided the Authority with the power to conduct all the activities outlined in the Interagency Agreement, notwithstanding any potential limitation in Section 5505(b)(4) of the Parking Authority Law.

### 4. Conclusion

For the foregoing reasons, we conclude that the General Assembly intended to authorize the activities outlined in the Interagency Agreement under both the Parking Authority Law and the Vehicle Code. Because the activities outlined in the Interagency Agreement are authorized by statute, the PSP did not unconstitutionally exercise legislative power by entering into the Interagency Agreement. Accordingly, we grant summary relief to Respondents and deny Petitioners' Application for Summary Relief.

**RENÉE COHN JUBELIRER, Judge**

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Independent Towers and : \
Salvors Association, and K&A Auto : \
Salvage, Inc., and Steffa Metals Co., : \
Inc., and Derkas Auto Body, Inc., and : \
Morton Towing & Recovery, and : \
Norton's Tow Squad, Inc., : \
            : \
            Petitioners : \
            : \
         v. : No. 455 M.D. 2012 \
            : \
Commonwealth of Pennsylvania, : \
Pennsylvania State Police and Frank : \
Noonan, in his capacity as : \
Commissioner of the Pennsylvania : \
State Police and Philadelphia Parking : \
Authority and Vincent Fenerty, in his : \
capacity as Executive Director of the : \
Philadelphia Parking Authority, : \
            : \
            Respondents :

## O R D E R

    **NOW**, August 26, 2015, the Application for Summary Relief filed by the Philadelphia Parking Authority and Vincent Fenerty and the Petition for Summary Relief and Summary Judgment filed by the Pennsylvania State Police and Frank Noonan are hereby **GRANTED**. The Application for Summary Relief filed by Petitioners is hereby **DENIED**.

                                              **RENÉE COHN JUBELIRER, Judge**